## APTHORP V. BACKUS.

IN this action, the plaintiff was described by the name of " Henrietta Apthorp, of the island of Jamaica, in the West Indies, a minor, of the age of sixteen years, who sues by Perez Morton, Esq. of Boston, in the county of Suffolk, and commonwealth of Massachusetts, her next friend and guardian."— Then followed the declaration, in these words:— " That to the plaintiff the defendant render the seisin and peaceable possession of a certain lot or parcel of land, with the buildings thereon; which lot consists of about one-eighth part of an acre in quantity, is situated at a place called Chelsea, or Norwich Landing (then describing the boundaries) and is the same estate which, on the 18th day of February, A. D. 1768, was, by deed of mortgage, conveyed by Eleazer Fitch, Esq. of Windham, in the county of Windham, to Mr. Stephen Apthorp, then of Bristol, in the kingdom of Great Britain, but late of said island of Jamaica, now deceased, as by the records of said town of Norwich may appear; which said Stephen, when in life, was parent of the said Henrietta. Of which described premises the said Stephen being in full life, on the 2d day of May, A. D. 1770, became well and legally seised, in his own right, in fee, and so thereof continued to be seised and possessed, until the day of his death, which happened on or about the 1st day of January, A. D. 1773, when the said Stephen died, leaving issue and only heir the forenamed Henrietta; who thereupon, at the death of her said parent, by virtue of her right of inheritance in the demanded premises, by her said next friend,

became immediately well and legally seised, in her own right in fee, of the same estate, and thereof continued seised and possessed, until on or about the 1st day of January, A. D. 1774; at which time the defendant, with force and arms, entered into said described premises, against law and without right, and disseised the plaintiff thereof, and put her out therefrom, and every part thereof, described as aforesaid (excepting two stores standing on said land, and the land covered by said stores;) and ever since the defendant hath and still doth continue to deforce and hold the plaintiff out therefrom, taking to himself the whole profits, use, and improvements of the demanded premises, to this time; to the damage of the plaintiff the sum of, etc. to recover which, together with the seisin and quiet possession of said demanded premises, and his cost, she brings this suit," etc.

The general issue was pleaded, and a verdict for the plaintiff.— The defendant moved in arrest of judgment, and assigned five reasons: —

1. That the plaintiff's appearance in the cause was by attorney, whereas it ought to have been by her guardian, or next friend, admitted by rule of court; — and therefore, there was no legal appearance on the part of the plaintiff.

2. That the declaration is insufficient to found any judgment upon; for that it appears the plaintiff is an alien;— and therefore, cannot, by law, hold or recover any real estate.

3. That the declaration is inconsistent and contradictory, in one part demanding the whole of which she declares herself to have been seised, and in another part, demanding less.

4. That the verdict is inconsistent and uncertain; for it finds the defendant guilty of disseising the plaintiff in man-

ner and form, and for her to recover the demanded premises, which is more than by her own showing she is entitled to.

5. That the jury were equally divided, and never did agree to return said verdict as being binding and conclusive; but they agreed, that two verdicts should be wrote, and both committed to the foreman, and when called upon for their verdict, the one in favor of the plaintiff should be delivered, and if not accepted by the court, then the other verdict should be delivered up.

But the motion was ruled insufficient.

By LAW, C. J., and ELLSWORTH, J.  The first exception is — That there has been no legal appearance on the part of the plaintiff: —

The writ is expressed in these words:  " To answer to Henrietta Apthorp, a minor, who sues by Perez Morton, Esq. her next friend and guardian; " and the replication is signed, and the issue closed by the said Perez Morton, as guardian.— So that the suit and appearance are good as by common guardian.

If, however, the suit and appearance are considered as by *prochein ami,* because the term next friend is also used in the declaration, and may denote the special kind of guardianship intended, still they are good:  For though we have no statute, as there was originally in England, authorizing suits by *prochein ami,* yet long practice, and the reason of the case, are sufficient.  It is for the benefit of infants who have no guardians, or such as from particular circumstances cannot or will not sue for them, as the case may require, to admit their suits by *prochein ami;* whose power and responsibility relative thereto, are the same as guardians:  And there can be no danger to the infant from such practice; for

the court under whose inspection the suit is prosecuted, is bound to take care for the infant; and if the *prochein ami* is not a responsible and proper person, or misconducts the suit, or institutes one not apparently for the benefit of the infant, will displace him, and, if need be, appoint another.

It is, indeed, the duty of judges of probate to see that infants who need guardians have them; but, through want of information, or for other reasons, they frequently fail to do it. Their neglect should not prejudice the infant, or deprive him of the benefit of a friend, who may be willing to step in and protect him in a particular suit; and if the infant does not happen to live or reside within any of their respective districts, as is the case here, they are not authorized by the statute to appoint a guardian for him. If the infant in this case had a guardian by whom she might have sued, and has not, it must have been taken in abatement, if at all.

It is further objected here — That there is no record of the admission of the *prochein ami.*— By the practice of this court (and it is a matter to be governed by practice; and the mode of process) it is not necessary there should be; it is enough that it appears from the files and pleadings, which become parcel of the record, that he doth in fact prosecute. This is sufficient to satisfy the court, and to render the *prochein ami* responsible to the adverse party for costs, and to the infant, for the conducting and consequences of the suit.—As to the practice settled in the courts at Westminster Hall: — In the Common Pleas there is a record of the admission; in the King's Bench there is not, but only a recital of it in the declaration — J. S. per A. B. *guardiānum suum ad hoc per cur. specialiter admissum queritur,* etc. (See 3

Bac. Abrid. 149, and authorities there referred to.) And if the entry only is *per guardianum suum*, omitting the clause *ad hoc per cur. specialiter admissum*, still it is good (Carth. 256.) — In the Court of Chancery there is neither a record nor a recital of it; and the admission, as in our courts, is merely a tacit one.—Any person who will befriend the infant, brings a bill as *prochein ami* to him, without his consent, or any appointment of court; and if the court disapprove of him, or of his proceedings, they dismiss him, and, if need be, appoint another; and if two happen to sue, that suit is sustained which appears most for the benefit of the infant, and the other is dismissed — 3 Bac. Abrid. 149 — Str. 708.— 3 Atk. 603.— In this state, the declaration is parcel of the writ, and the *prochein ami* is therefore named in the writ, as in a chancery bill, and begins to act when the writ is prayed out, and before the court sits, that is to have cognizance of the suit; nor are there courts here continually open, who might admit or appoint him previous to the suit's being commenced. — The *prochein ami* comes in therefore here, as in chancery in England, without any previous appointment, or formal admission; and if the court disapprove of him, they will, upon motion, or without, when he comes to appear, or in any stage of the suit, displace him, and if the case requires it, appoint another.— Tacit admission, from the nature of the case, and the mode of process here used, is sufficient, and all that practice has made necessary.

If, however, a formal admission, and a record of it, in nature of a warrant of attorney, were necessary to authorize the appearance of a *prochein ami*, it would be too late to

take advantage of the want of them after verdict.—Want of warrant of attorney, which is a defect of as high a nature, and of the same kind, is helped after verdict, by the English Statutes of Jeofails, 18 Eliz.— Stra. 305.—And by the Statute of Jeofails of this state, which is remedial, would be helped here, if necessary; though, by the more loose practice of this state, the recording or filing warrants of attorney is not in use. A record, therefore, of the formal admission of the *prochein ami*, cannot be necessary to validate his appearance in the present stage of this cause.

It is further objected — That appearance in this case for the plaintiff hath been by attorney: — In the Court of Common Pleas, where the form of entering the appearance is not now material, if it has been regular in this court, it appears that pleadings were signed for the plaintiff by attorneys, though the judgment there was of a suit, as expressed in the declaration, by next friend and guardian: — But if pleadings had been signed for the plaintiff by attorneys in this court, still the appearance, as well as the suit, might be considered as by *prochein ami*, or guardian; for there is no good reason why they should be obliged constantly to appear in person, and may not appoint an attorney, to attend and conduct the suit for them; though an infant has not discretion for such an appointment, they have; and it would be detrimental to the infant, and inconvenient in practice, if they could not make use of it.

If, however, the appearance in this case has been merely by an attorney, and an attorney appointed by the infant, though if it had been objected to before, which it does not appear to have been in this court, it would have been ill; yet no advantage can be taken of it after verdict in the infant's favor. So is the English law declared by the Statute

of Jeofails, of 21st Jac. I.— and the Statute of Jeofails in this state extends as far; — and the rule is founded in the reason of the case, and would hold without the aid of any statute: For the only reason why a minor is to sue by guardian, or *prochein ami*, is, that his suit may not suffer through his want of discretion to appoint an attorney, or conduct it himself; but if it hath in fact been conducted to a successful issue, though by himself or his attorney, the design of the law is answered.—And the minor ought not, because he hath obtained a verdict with less aid than the law would have given him, lose the benefit of what he hath obtained, and be put in a worse condition than if he was of full age.—Which way soever, therefore, the appearance in this case hath been, it is good now.

The second exception moved in arrest, is — That the declaration is ill; because the plaintiff is an alien; and cannot, therefore, maintain a real action: —

A state may exclude aliens from acquiring property within it of any kind, as its safety or policy may direct; as England has done, with regard to real property, saving that in favor of commerce, alien merchants may hold leases of houses and stores, and may, for the recovery of their debts, extend lands, and hold them, and upon ouster have an assize. Dyer, 2, 6.— Bac. Abrid. 84.— But it would be against right, that a division of a state or kingdom should work a forfeiture of property, previously acquired under its laws, and that by its own citizens; which is the case here.— The plaintiff's title to the land in question accrued while she was not an alien, nor could she be affected by the disability of an alien, but was as much a citizen of the now state of Connecticut, as any person at present within it, and her descent

was cast under its laws; — her title is also secured by the treaty of peace, which stipulates, that there should be no further forfeitures or confiscations, on account of the war, upon either side.

The subsequent statute of this state, declaring aliens incapable of purchasing or holding lands in this state, does not affect the plaintiff's title, otherwise than by recognizing and enforcing it; for it hath a proviso, that the " act shall not be construed to work a forfeiture of any lands which belonged to any subjects of the king of Great Britain before the late war, or to prevent proprietors of such lands from selling and disposing of the same to any inhabitant of any of the United States."— It is not, indeed, expressly said, that the proprietors of such lands may maintain actions for the possession of them, but this is clearly implied; for lands without the possession are of no use; and wherever the law gives or admits a right, it gives or admits also everything incident thereto, as necessary to the enjoyment and exercise of that right: —And besides, they cannot sell their lands till they first get possession of them; for all sales of land in this state, whereof the grantor is dispossessed, except to the person in possession, are, by express statute, void — So that the plaintiff is not barred of her title, or right of action, either at common law, or by statute.

Another exception to the declaration, is — That the plaintiff demands more land than she has shown herself to have been disseised of: —

The declaration, or declarative part of the writ, is — That the plaintiff was seised of a certain lot of land: That the defendant has disseised her of the whole lot, except what is covered by two certain stores; to her damage, etc. and concludes, " to recover which, together with the seisin of the

said demanded premises " etc.— The word demanded may here well be rejected, as surplusage; and the said premises will be those last mentioned, viz. the lands the defendant withholds. If the word demanded be retained, the reference, regard being had to the subject-matter and the sense, may fairly be the same; and after verdict, that construction is to be adopted which best supports the declaration. But if the demand is in fact of more lands than the plaintiff has set forth a disseisin of, it is, nevertheless, good for what she has so set forth; and the declaration would have been good upon demurrer.

A fourth exception is to the verdict — That it gives the plaintiff more than from the declaration she had a right to:—

The verdict is — That the defendant is guilty, as the plaintiff has alleged; and therefore, that the plaintiff shall recover the seisin and possession of the demanded premises, with one shilling damage, and her cost.— By demanded premises here, whatever inaccuracy there may be in the declaration, is fairly to be intended (and the most favorable intendments are always to be made in support of verdicts) the premises in dispute between the parties, which is what the defendant is said to have deforced the plaintiff of, and which alone the issue of not guilty respected. It would be stultifying the jury to suppose they meant anything more.

If the jury, because they have found the defendant guilty of the disseisin he was charged with, have gone farther, and inferred that the plaintiff should recover more land than the defendant was guilty of disseising, this wrong inference does not hurt the verdict; it is not a material part of it. It was enough for the jury to find the defendant guilty, and the damages; the issue went no farther; and this was enough

for the court to render a judgment upon.— As in a *qui tam* prosecution for theft, it is enough for the jury to find the defendant guilty, and the value of the goods stolen, without adding, that the owner shall recover three-fold the value of them.  Or in an action of account, upon the issue of not bailiff and receiver, it is enough for the jury to say, that the defendant was bailiff and receiver, without adding, and therefore that he shall account.— It is the duty of the court to make the legal inferences from the facts put in issue, and found by the jury, and to disregard the inferences made by the jury, if they happen, as is supposed in this case, to be made wrong.  Stra. 1036.— Hob. 54.— Doug. 361.— So that whether the jury have inferred that the plaintiff ought to have recovered more land than they find the defendant guilty of withholding from her, or not, does not affect the validity of the verdict.  There is enough well found to render a judgment upon; and *utile per in utile non vitiatur*.

As to the other exception to the verdict — That it was assented to by some of the jury, upon an understanding and agreement, that if the court should not accept it, a verdict should be given for the defendant:—

Admitting the facts to be so, as the court did accept it, it was good, and had the absolute assent of the jury, upon the principle the objection goes.  This exception has often been overruled.— When a jury have given in a verdict upon oath, and assented to it in court, they cannot afterwards be received to say, that they did not agree to it; and it is not material to the verdict what they had agreed further to do, in case the court should not accept it.  Nor is it an unreasonable ground for a jury, in a doubtful case to change

their verdict upon, that the opinion of the court is against it; nor can it be misbehavior in them, at the time of finding their verdict, to agree that they will alter it, if such should be the opinion of the court.

Nor does it affect the validity of a verdict, if a jury, as is suggested was the case here, in a doubtful case decide by a major vote which way it should be found, and afterwards consent, and bring it in accordingly. Nothing is here decided by chance. The minority might ultimately be convinced; for it is a reasonable ground for them to distrust, and change their opinion upon, and such as must be often gone upon, that the majority differ from them. If they only acquiesce it is sufficient. And so have been the decisions. The case of Lawrence and Boswell, where the jury voted for a verdict, and seven were for finding it as it was found, and it was holden to be good (In B. R. Trin. 26 Geo. II.) is in point.

So the motion in arrest was ruled insufficient.

SHERMAN and PITKIN, JJ., *contra.* We are of opinion, that the motion in arrest is sufficient.—First, Because Perez Morton, who commenced and prosecuted the suit, had no legal authority to act as guardian or *prochein ami* to the plaintiff. There is no pretense that he was ever appointed her guardian, nor has he ever been authorized by her or the court to prosecute this action as her *prochein ami;* but he has acted therein merely as a volunteer, without any kind of appointment or authority.

The laws of this state authorize the Courts of Probate to appoint guardians for infants, to take care of their persons and property; who are to give bonds for the faithful discharge of their trust, and to render an account when required; but no provision is made for an infant to sue by

*prochein ami;* when it shall be found necessary, the legislature will doubtless provide for it.

It was not admitted in England by the common law, but was introduced by the statute of Westminster 1, chap. 48, and further regulated by statute of Westminster 2, chap. 15, and is allowed in only some special cases.— (Cro. Jac. 641.) — But those statutes are of no force in this state: And in England no person is allowed to prosecute any suit in behalf of any infant, as *prochein ami*, without a special appointment, and admission by the court entered on the record.

The form of admission in the Court of King's Bench is as follows:

" By the court, to-wit: It is granted by this court, that A. B. gentleman, do prosecute for C. D. who is within age, as the next friend of the said C. D. against E. F. of a plea of debt," etc.

The form of admission is nearly the same in the Court of Common Pleas. (See the forms of entry, 1 Attorney's Practice, 210.— 2 Attorney's Pock. Comp. 191.) — But it is said, that long practice, and the reason of the case, is sufficient to warrant the proceedings in this case; — on which we would observe — that we know of no adjudication in this state in favor of the right of an infant to sue by *prochein ami;* and it is probable that the few instances wherein it has been practiced, have been occasioned by not duly attending to the authority under which it was introduced and practiced in England, and that there was no such authority for it here; and some cases have passed into judgment without being objected to by the defendant, or noticed by the court. So there have been instances wherein infants

have appeared by attorney that have passed *sub silentio*. But an erroneous practice, long persisted in, or often repeated, will not thereby become legal; and we are of opinion, that the reason is on the other side of the question. It is allowed, that it would not be reasonable to admit an infant to appear by attorney, because he has not sufficient discretion to appoint one; but would it not be much safer for him to have his cause prosecuted by an officer of the court, who must be a person of known probity, and is under the obligation of an oath to be faithful to his trust, than to trust it with a stranger not known to the infant, nor appointed by the court, but, as in the present case, a foreigner and alien, with respect to the infant, and out of the power and jurisdiction of this court, and who, if he gets possession of the estate of the infant, by means of this suit, may put her in a worse condition than to have it remain in the possession of the present defendant.

If the courts of law here adopt the British practice of allowing infants to sue by *prochein ami*, they ought also to adopt their rules of appointing and admitting the persons, so as to give like security to the infant; and if an act of the court is necessary for that purpose, it must appear by record. Ld. Raym. 232, Pechey v. Harrison.— "The plaintiff (being an infant) brought an action by guardian, and after verdict for him, it was moved in arrest of judgment, that there was no warrant for him to appear by guardian entered upon record; and it was resolved by all the court, that the admittance of a guardian ought to be upon record; because it is the act of the court, for the court takes care of infants, that none shall sue for them but those that are responsible; for if the infant be prejudiced, he may have his action

against him; but judgment cannot be arrested for this cause, any more than if no warrant of attorney be filed: But upon error brought, and diminution alleged, and certified in the King's Bench, it will be ill, for which the judgment may be reversed; but judgment can never be arrested, but for that which appears upon the record itself," etc.

But why should the court render an erroneous judgment, when they have notice of the error by a motion in arrest?

This case shows that a judgment in favor of an infant may be reversed, for want of a record of the admission of his guardian, though the court would not arrest the judgment for that cause. But this case differs from that; for that was prosecuted by a guardian who had a legal authority to prosecute the action, and the only defect was the want of his having produced his authority to the court, for their admission and entry on record; and therefore it compares with the registering a warrant of attorney, to appear for a person of full age: But in this case the prosecutor could have no kind of authority, without an actual appointment by the court; and therefore, there has been no legal appearance or prosecution on the part of the plaintiff.— Therefore, for this reason, we are of opinion, that the judgment ought to be arrested.

As to the second and fifth exceptions — We agree in opinion with the chief justice and Judge Ellsworth, for the reasons given by them.

As to the third and fourth exceptions — We are of opinion, that they are sufficient; for if a judgment should be rendered, pursuant to the plaintiff's demand, and the verdict of the jury, the plaintiff will recover more land than by her own showing she has a right to recover; and

although the jury might have cured the defect in the declaration, by finding a verdict only for the recovery of the land of which the plaintiff had been disseised; but as they have not done it, we think that it cannot be regularly helped by the judgment.

But if, notwithstanding these reasons to the contrary, judgment shall be rendered for the infant, we think that the execution ought to be stayed, until she arrive at full age, or until a guardian legally appointed appears to take possession of the estate for her benefit.