# In re WILLIAM W. PACA, a Lunatic.

## Petition of William P. Rasin.

### *Lunatics—Suit by Next Friend.*

A court which has appointed the committee for a lunatic should not appoint a guardian *ad litem* or next friend for the purpose of filing a caveat to a will on behalf of the lunatic, by reason of the committee's alleged personal interest in upholding such will, without first giving the committee notice of the petition for such appointment, and an opportunity to answer it and be heard. pp. 48, 53

When a petition by the near relative of a lunatic alleged that the committee, previously appointed by the court, was interested, by reason of a bequest to such committee and his appointment as executor, in upholding a will made by one incompetent to make it, and that it was to the interest of the lunatic, as the next of kin of such alleged testator, to have the validity *vel non* of such will determined, and physicians' affidavits as to the incompetency of the alleged testator were filed as exhibits with the petition, *held* that it was for the court to take some action to have the facts passed upon. p. 49

In view of Rule 9, of the General Equity Rules adopted by the Court of Appeals under authority of the State Constitution, providing that persons under any disability to sue may sue by their guardian or committee, if any, or by their *prochein ami*, the Circuit Court may approve a suit by a lunatic through his next friend, when the interest of the committee, previously appointed by such court, is in conflict with that of the lunatic. pp. 50-53

*Decided January 11th, 1922.*

Appeal from the Circuit Court for Queen Anne's County, In Equity (HOPPER and WICKES, JJ.).

Petition by William P. Rasin, as next friend of William W. Paca, a lunatic, for the appointment of a guardian *ad*

*litem* to file a caveat to a will. From a decree dismissing the petition, petitioner appeals. Cause remanded without affirmance or reversal.

The cause was argued before BOYD, C. J., BRISCOE, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*L. Wethered Barroll*, for the appellant.

BOYD, C. J., delivered the opinion of the Court.

A petition was filed in the Circuit Court for Queen Anne's County by William P. Rasin in which he made the following allegations:

1. That he files the petition as the next friend of William W. Paca, lunatic, who is an uncle of the petitioner, and who was adjudicated an incompetent by that court in May, 1873, and, as such nephew, he and his brother and two sisters are the nearest relations and the prospective next of kin and heirs at law of said William W. Paca, who is now confined at Spring Grove, Maryland, is of advanced age, being in about his eightieth year, is hopelessly insane, and petitioner is advised that it is not probable that said lunatic will ever recover his reason or be competent to administer his estate; that he has never executed a will, and at his death the petitioner and his brother and sisters will receive the entire estate of William W. Paca.

2. That on the 6th of February, 1921, William B. Paca, son of John P. Paca, deceased, and the nephew of said lunatic, died, and after his death a paper writing purporting to be his last will and testament was offered for probate in the Orphans' Court of Queen Anne's County, a duly certified copy of which is filed with the petition; that by said paper writing an estate amounting approximately to seventy-five thousand dollars is attempted to be devised and bequeathed to strangers of the blood of William B. Paca; that at the time of the execution of the paper writing the alleged testator was of unsound mind and incompetent to exe-

cute a valid will or testament, as will appear by the certificates of two physicians filed therewith; that the said paper writing should be declared void and of no effect, the said William B. Paca having in fact died intestate, and his estate should be distributed to William W. Paca, lunatic, solely, he being the only surviving brother of the late John P. Paca, deceased, the father of William B. Paca, and as the uncle of said William B. Paca is his sole next of kin and heir at law.

3. That by the alleged will one thousand dollars was bequeathed to Madison Brown, who is also named as one of the executors of said will; that said Madison Brown is likewise the committee of William W. Paca, lunatic, having qualified on or about the 25th of May, 1905; that he has been requested by the petitioner, through his solicitor, as the committee of William W. Paca, to proceed to file the caveat against the probate of the alleged paper writing, but has refused to do so, and advises petitioner that he purposes to assist in having said paper writing declared the last will and testament of William B. Paca, and its provisions executed; that it is apparent that owing to the position and diverse representative characters of said Brown, and the conflicting interests he might represent, he, as the existing committee of William W. Paca, lunatic, is not a proper party to institute and conduct caveat proceedings against the alleged last will and testament of William B. Paca.

4. That it is to the interest of the estate of William W. Paca, lunatic, that a caveat be filed in his behalf against the alleged will of Wiliam B. Paca, so that its validity *vel non* may be determined in behalf of William W. Paca, lunatic, upon an issue or issues sent to a jury, who should decide whether the said William B. Paca was of unsound mind and incompetent to execute a valid deed or contract, etc.; that your petitioner is advised that not only on account of his interest in the estate of William W. Paca,

lunatic, as one of his nearest relations, etc., but likewise because of his interest in the welfare of said lunatic, it is proper for him to apply to this court as his next friend for the appointment of an ancillary committee or guardian *ad litem* of the estate of the said William W. Paca, lunatic, so that some proper person shall be given authority to institute caveat proceedings in the orphans' court.

·5. "Your petitioner, therefore, shows that it is proper to apply to this court to appoint a committee or guardian *ad litem* of the person and estate of William W. Paca, lunatic, properly authorized, ancillary to and independent of the committee of the estate of said lunatic now in existence, and if necessary for the purpose of this proceeding, temporarily to remove the present committee, and that said committee or guardian *ad litem* so to be appointed shall have authority to caveat the alleged last will and testament of William B. Paca, deceased, in the Orphans' Court of Queen Anne's County, Maryland."

That petition, together with the exhibits, was filed in the lunacy case in Queen Anne's County, in which a trustee was appointed in 1873 and in 1905 Madison Brown was appointed trustee of the estate and committee of the person of William W. Paca, lunatic, in the place of Joseph Rasin, deceased. A decree was passed by the lower court dismissing the petition and amended petition, and denying the prayer for relief therein. The record only contains one petition and there is no amended petition in it.

There is no formal prayer in the petition, unless paragraph 5, above quoted, may be so considered. There is no prayer for process against Madison Brown, trustee and committee, and there is nothing in the record to show that he had any notice of the proceeding. Whatever the powers of a court of equity, which has appointed a committee, may be over him, it certainly would be bad practice for the court to grant such relief as is impliedly asked for, without giving

him notice of the proceedings and an opportunity to answer, if he desires to do so. We understand that the judges in the lower court were not satisfied that they had power to act, and we are requested to express our views as to what the correct practice is, under such circumstances as are shown by the petition and exhibits.

We are not aware of any direct decision in this State as to the proper method to pursue when it is alleged that the committee of a lunatic is interested in a bequest to him, and is also one of the executors, in a will made by one who is alleged to have been incompetent to make it, and that it is to the interest of the lunatic to have its validity *vel non* determined. With the petition there were filed affidavits of two physicians, who swore that they knew the testator intimately for many years, and that he was not in their opinion of sound and disposing mind and capable of making a valid deed or contract. The facts alleged in the petition and exhibits are of a character which would seem to demand of a court having jurisdiction and control over a lunatic's person and estate to take some action to have the facts passed upon. If it be true that William W. Paca is the only heir and next of kin of William B. Paca, no one else could caveat the will, and if the facts alleged are sustained in a caveat proceeding, it will very materially add to the lunatic's estate. It may be that his heirs and next of kin in reality have more interest in the result than he has, for if he has ample means now for his comfort and support, and will never recover so as to will his estate, they are the parties who will actually profit if the will is set aside, but while they have no legal interest in his estate during his life, that ought not to prevent the court from taking such steps as are necessary to have the question determined. It is manifest that Mr. Brown would not be the proper person to conduct a caveat, as without reflecting on his integrity in any way, the law would not permit him to be the sole representative of the lunatic in litigation which he was interested in defeating.

The question is, then, what can be done? In *Hamilton* v. *Traber,* 78 Md. 26, JUDGE MCSHERRY referred in his clear and interesting way to the powers of courts of chancery over the persons and estates of lunatics. There was then before the court the sale of real estate of a *non compos mentis* at the instance of a niece who had no legal interest in the property, but claimed to be acting solely for the alleged purpose of subserving the interests of the owner. After saying that a demurrer to the bill would have been successful, JUDGE MCSHERRY said: "Of course, we must be understood as dealing with the bill before us, and not with a totally different or dissimilar case, like, for instance, that of *Owings' Case,* 1 Bland, 294, where the interposition of the court is asked on behalf of a *non compos mentis* for the protection, *and not for the sale,* of the latter's property."

Section 114 of article 16 of the Code is as follows:

"The court shall have full power and authority, in all cases, to superintend and direct the affairs of persons *non compos mentis,* both as to the care of their persons and the management of their estates, and may appoint a committee, or a trustee or trustees, for such persons, and may make such orders and decrees respecting their persons and estates as to the court may seem proper."

In *Rutledge* v. *Rutledge,* 118 Md. 556, in speaking of that section, we said: "But while the language of that section is broad and was intended to confer large powers on courts of equity, subsequent sections of that article prescribe what is necessary to be done before the property of such persons can be sold or disposed of." While the subsequent sections must be complied with, if proceedings are taken in reference to the subjects referred to in them, they do not apply to the question now being considered, and we are concerned in the protection of the lunatic in regard to property claimed to be his by reason of the alleged invalidity of the will.

What is now Rule 9, of the General Equity Rules adopted by this Court, provides that "all infants and other persons

under any disability to sue may sue by their guardian or committee, if any, or by their *prochein ami;* subject, however, to such orders as the court or judge thereof may direct for the protection of infants and other persons"—then going on to require written authority to the solicitor for the use of the name of the next friend. That is one of the rules adopted under the provisions of section 18 of article IV of the State Constitution, which provided that "all rules and regulations hereby directed to be made shall, when made, have the force of law until rescinded, changed or modified by the said judges, or the General Assembly." It is in the precise language of what was formerly Rule 10, afterwards adopted in the Code of 1888 as section 125 of article 16, and has been continuously in force since the rules were adopted under the above provision of the Constitution in 1883.

That rule undoubtedly applies to suits by persons *non compos mentis,* as they are persons under disability to sue (*Miller's Equity Proc.,* sec. 13) and it in terms includes a case where there is a committee, the right to sue being in the alternative—to sue by his committee or by his next friend. One of the principal objects of permitting suits in the alternative, where there is a committee, was doubtless to provide for just such a case as this, where the committee's personal interest is in conflict with that of the lunatic, or for some reason he ought not to be permitted to control the suit.

As in this case there was a committee, appointed by the Circuit Court of Queen Anne's County, the orderly and proper practice to pursue is undoubtedly to apply to that court for its approval of a suit by a next friend—especially as the rule referred to makes the right to sue subject to the orders of the court. Although it is said in *Alexander's Chancery Practice,* 238, that "the committee holds his office at the pleasure of the court, and is removable at its discretion," in a proceeding such as this the committee should be made a party to the petition, if he is still within the jurisdiction of the court, and at least ordinarily the court should give him

the opportunity to answer the petition and be heard, as otherwise there may be confusion and injury done a lunatic, or his estate, or his name be used in proceedings for the benefit of others, and not for his own benefit, if the court is not fully informed as to the facts and circumstances.

Although we are satisfied that the above rule authorizes suits in this State by lunatics through their next friends, under proper circumstances, it will not be out of place to refer to some authorities. In 10 *Encyc. Pl. & Pr.*, 1224, it is said: "Where a person of unsound mind has not been so adjudged, or there has been no guardian or committee appointed for him, the suit is to be brought in the name of the incompetent by some responsible party as his next friend," and on page 1225 it is said: "Another case where the lunatic may sue by a next friend is where, although he has a committee, the interests of the two are adverse. Sometimes, in such case, the suit may be brought by the attorney general or the officer representing the state for the time being." *Norcom* v. *Rogers,* 16 N. J. Eq. 484, and *Bird* v. *Bird,* 21 Gratt. (Va.) 712, are cited in the notes. In 14 *R. C. L.* 612, in section 63 of the article on insanity, it is said: "Even after a guardian has been appointed for an insane person, if the interests of the guardian clash with those of the insane person, most of the authorities hold that a next friend may prosecute the action, though some declare that a special guardian should be appointed to conduct the suit." In 22 *Cyc.* 1231, it was said that "where a general guardian or committee has been appointed for an insane person, an action on behalf of or against such person should be brought or defended by such guardian or committee and cannot be prosecuted or defended by his next friend or guardian *ad litem, except where the appointment of a special guardian, guardian ad litem or next friend for that purpose is permitted by statute; and except where the interests of the general guardian or committee are adverse to those of his ward,* the guardian fails to act, or the insane person is a non-resident" (italics ours). In the note

to the first exception, cases from California, Illinois, Minnesota and Wisconsin are cited, and in the one to the second exception there are cited *Isle* v. *Cranby,* 199 Ill. 39, 64 N. E. 1065, 64 L. R. A. 513; *Cates* v. *Woodson,* 2 Dana (Ky.) 452; *Hewitt's Case,* 3 Bland, 184; *Norcom* v. *Rogers,* 16 N. J. Eq. 484; *Hinton* v. *Hinton,* 81 Va. 588; *Bird* v. *Bird,* 21 Gratt. 712, and *Marx* v. *Rowlands,* 59 Wis. 110, 17 N. W. 687. The last was a will case and quite similar to this one. *Hewitt's Case,* cited in that note, held that, where it appeared that the lunatic's committee is interested in the subject in controversy, it becomes necessary to appoint a disinterested, capable person as his guardian, to answer for him. That was where the lunatic was a defendant. In 14 *Encyc. Pl. & Pr.,* 997, it is said: "There is but little substantial difference between the office of next friend and that of a guardian *ad litem.* The chief distinction is that the former term is usually applied to one who appears on behalf of a plaintiff, while the corresponding representative of a defendant is usually denominated a guardian *ad litem.* But this distinction is not universal, and by the practice and statutes of some states, a plaintiff under disability must be represented by a guardian *ad litem.* There is substantially no difference between such a guardian *ad litem* and a next friend."

Without referring to other authorities or discussing the subject further, we will remand this cause without affirming or reversing the decree, so that the petition can be amended by a prayer for process or order against the committee for his appearance, and for such further proceedings as may be in accordance with this opinion.

> *Cause remanded without affirming or reversing the decree under provisions of section 38 of article 5 of the Code.*