629 A.2d 707

**Tonya BERRAIN et al.**

v.

**Raymond KATZEN.**

**No. 147, Sept. Term, 1992.**

Court of Appeals of Maryland.

Aug. 25, 1993.

Saul E. Kerpelman, Baltimore, for appellant.

Robert K. Nead (Sandra B. Minton, O'Doherty, Nead, Hoffman, Karey), Baltimore, all on brief, for appellee.

Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

KARWACKI, Judge.

In this appeal we are asked to determine whether the trial court abused its discretion in dismissing with prejudice personal injury actions of minors brought on their behalf by their mother as next friend when their mother failed to respond to interrogatories propounded by the defendant.

## I.

Karla Berrain, Karl Berrain, and Tonya Berrain, who are now aged 7, 9 and 11, respectively, allegedly suffered brain damage from lead poisoning. It is claimed that the primary source of their exposure to that toxin was the deteriorating lead based paint the children ingested while living with their mother, Tonia Hanson, at premises she rented from the appellee, Raymond Katzen. A suit seeking damages for that lead paint poisoning was brought in the Circuit Court for Baltimore City in 1987 on behalf of the Berrain children by their mother and custodial parent as next friend pursuant to Maryland Rule 2–202(b).[1] That suit was subsequently dismissed without prejudice on July 17, 1989, for lack of prosecution pursuant to Md.Rule 2–507.[2] A second action was filed in

---

1. Maryland Rule 2–202(b) provides:

   **(b) Suits by Individuals Under Disability.**—An individual under disability to sue may sue by guardian or other like fiduciary or, if none, by next friend, subject to any order of court for the protection of the individual under disability. When a minor is in the sole custody of one of its parents, that parent has the exclusive right to sue on behalf of the minor for a period of one year following the accrual of the cause of action, and if the custodial parent fails to institute suit within the one year period, any person interested in the minor shall have the right to institute suit on behalf of the minor as next friend upon first mailing notice to the last known address of the custodial parent.

2. Md.Rule 2–507 provides in pertinent part:

   **"(c) For Lack of Prosecution.**—An action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry, other than an entry made under this Rule, Rule 2–131, or Rule 2–132, except that an action for limited divorce or for permanent alimony is subject to dismissal under this section only after two years from the last such docket entry.

   **(d) Notification of Contemplated Dismissal.**—When an action is subject to dismissal pursuant to this Rule, the clerk, upon written request of a party or upon the clerk's own initiative, shall serve a notice on all parties pursuant to Rule 1–321 that an order of dismissal for lack of . . . prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule.

   **(e) Deferral of Dismissal.**—On motion filed at any time before 30 days after service of the notice, the court for good cause shown may defer entry of the order of dismissal for the period and on the terms it deems proper.

the Circuit Court for Baltimore City in 1991 against Katzen. Again, the suit was filed on behalf of the Berrain children by their mother as next friend pursuant to Md.Rule 2–202(b). On December 2, 1991, defense counsel propounded interrogatories to the plaintiffs through their mother. Md.Rule 2–421(b) requires in part that:

> "The party to whom the interrogatories are directed shall serve a response within 30 days after service of the interrogatories . . .

After more than seven months of waiting, on July 20, 1992, Katzen moved for sanctions for failure to provide discovery pursuant to Md.Rule 2–432(a). Included in the defendant's motion was a certification of defense counsel's good faith attempts to discuss and resolve the discovery dispute. Those efforts included forwarding a second copy of the interrogatories to plaintiffs' counsel and contacting plaintiffs' counsel by telephone. Md.Rule 2–432(a) provides in part:

> "A discovering party may move for sanctions under Rule 2–433(a), without first obtaining an order compelling discovery under section (b) of this Rule, . . . if a party fails to serve a response to interrogatories under Rule 2–421 . . ."

Among the sanctions sought by the defendant was a judgment of dismissal with prejudice in favor of the defendant against the plaintiffs. Md.Rule 2–433(a) provides in part:

> "Upon a motion filed under Rule 2–432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:

> \*      \*      \*      \*      \*      \*

> (3) An order . . . dismissing the action or any part thereof . . ."

---

**(f) Entry of Dismissal.**—If a motion has not been filed under section (e) of this Rule, the clerk shall enter on the docket "Dismissed for lack of . . . prosecution without prejudice" 30 days after service of the notice. If a motion is filed and denied, the clerk shall make the entry promptly after the denial."

The trial court dismissed the action with prejudice and denied the plaintiffs' motion for reconsideration on September 17, 1992. An appeal to the Court of Special Appeals was noted the same day.[3] Prior to argument of the case before the intermediate appellate court, we issued a writ of certiorari on our own motion. 329 Md. 337, 619 A.2d 547.

## II.

### A.

In *Baltimore Transit v. Mezzanotti*, 227 Md. 8, 174 A.2d 768 (1961), Judge Prescott, speaking for this Court, explained:

> "We do not deem it necessary nor desirable, at this time, to make an extended or elaborate statement concerning our discovery rules. It will suffice to say that it is clear they are broad and comprehensive in scope, and were deliberately designed so to be. One of their fundamental and principal objectives is to require the disclosure of *facts* by a party litigant to all of his adversaries, and thereby to eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation. If all of the parties have knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts, the parties should be able properly to prepare their claims and defenses, thereby advancing the sound and expeditious administration of justice. In order to accomplish the above purposes, the discovery rules are to be liberally construed. And the trial judges, who are primarily called upon to administer said rules, are vested with a reasonable, sound discretion in applying them, which discre-

---

3. In addition to asserting claims on behalf of the infant plaintiffs as their next friend, Tonia Hanson also asserted claims in her own right for expenses she allegedly incurred as a result of the lead poisoning allegedly suffered by her children. No issue has been raised in this appeal as to the propriety of the dismissal of her individual claims with prejudice and that judgment will be affirmed.

tion will not be disturbed in the absence of a showing of its abuse."

*Id.* at 13–14, 174 A.2d at 771 (emphasis in original). *See also Androutsos v. Fairfax Hospital,* 323 Md. 634, 638, 594 A.2d 574, 576 (1991);. *Public Service Comm'n v. Patuxent Valley Conservation League,* 300 Md. 200, 216, 477 A.2d 759, 767 (1984); *Kelch v. Mass Transit Administration,* 287 Md. 223, 229–30, 411 A.2d 449, 453 (1980); *Klein v. Weiss,* 284 Md. 36, 55, 395 A.2d 126, 137 (1978); *Mason v. Wolfing,* 265 Md. 234, 236, 288 A.2d 880, 881 (1972); *Williams v. Moran,* 248 Md. 279, 291, 236 A.2d 274, 281–82 (1967); *Pfeiffer v. State Farm Mut. Auto. Ins. Co.,* 247 Md. 56, 60–61, 230 A.2d 87, 90 (1967); *Caton Ridge, Inc. v. Bonnett,* 245 Md. 268, 276, 225 A.2d 853, 857 (1967); *Miller v. Talbott,* 239 Md. 382, 387–88, 211 A.2d 741, 744–45 (1965); *Guerriero v. Friendly Finance Corp.,* 230 Md. 217, 222–23, 186 A.2d 881, 884 (1962).

One method employed in our rules to promote compliance is the sanctions scheme set forth in Rules 2–432 and 2–433. We have had ample opportunities to underscore the enforcement of the sanctions against errant parties. In *Mezzanotti, supra,* we rejected the claim that a sanction of default judgment violated due process of law, stating:

"The claim is without merit. Rule 422 c [the precursor of Rule 2–432], as does Rule 37(b)(2) of the Federal Rules of Civil Procedure, empowers the court, among other things, to enter a judgment by default against a party who refuses to answer interrogatories. Such authority, when properly exercised, has been held not to violate due process of law. *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530. If a party can refuse to answer and be defaulted, and still present a 'meritorious' defense when the default judgment is extended, the party has suffered nothing by its refusal to answer, and Rule 422 c is meaningless."

227 Md. at 21, 174 A.2d at 775.

In *Lynch v. R.E. Tull & Sons, Inc.,* 251 Md. 260, 247 A.2d 286 (1968), a plaintiff filed a contract action. The defendant counterclaimed and filed interrogatories. The plaintiff failed

to answer the interrogatories and the defendant sought sanctions. The trial court found the plaintiff had flagrantly abused the discovery rules. In affirming the trial court's dismissal of Lynch's claim and entry of judgment of default on Tull's counterclaim, we observed:

> "The reasons for Lynch's failure to answer the interrogatories, which Judge Shure said were apparent to him as constituting a 'flagrant abuse' could well have been a deliberate, if not wilful, attempt to hinder or prevent effective presentation of Tull's defenses and counterclaims, or to stall in revealing his own weak claim or defense."

*Id.* at 262, 247 A.2d at 287.

This Court has consistently held that failure to furnish discovery sought under our Rules can result in the sanction of dismissal of a claim or an order of default. To hold otherwise would undermine the administration of our courts. *See also Attorney Grievance Comm'n v. Kerpelman,* 323 Md. 136, 148–49, 591 A.2d 516, 523, *cert. denied Kerpelman v. Attorney Grievance Comm'n of Maryland,* —— U.S. ——, 112 S.Ct. 374, 116 L.Ed.2d 326 (1991); *Attorney Grievance Comm'n v. Pearson,* 322 Md. 154, 163, 586 A.2d 25, 29 (1991); *Adams v. Mallory,* 308 Md. 453, 460–61, 520 A.2d 371, 375 (1987); *Glass v. Glass,* 284 Md. 169, 170–72, 395 A.2d 485, 486–87 (1978).

### B.

The question remains, however, whether such sanctions were appropriate in the instant case where the infant plaintiffs' capacity to sue was subject to the control of a next friend. Md.Rule 2–202(b), which we quoted in footnote 1, *supra,* is derived from former Md.Rule 205c and d which provided:

c. *Infant—Suit by Mother—Tort.*

Where a tort shall be alleged to have been committed against any infant, and said infant is in the sole custody of its mother, the mother, in the first instance shall have the right to institute suit against the alleged tort-feasor or tort-feasors for and on account of such alleged tort; provided, however, that if the mother, within six months after the

commission of the alleged tort, shall have failed to institute suit ·as aforesaid, then any person interested in said child, after having first given notice to its mother, by registered mail at her last known address, shall have a right to institute suit as next friend to such infant.[4]

d. *Plaintiff Under Disability—Guardian—Committee— Next Friend.*

A person under disability to sue, may sue by his guardian or committee, or by his next friend, subject, however, to such orders as the court may direct for the protection of infants and other persons; but before the name of any person shall be used in any action to be instituted as next friend of any infant, such person shall sign a written authority to the attorney for that purpose, and such authority shall be attached to the original pleading."

Former Rule 205c, which we promulgated in 1957, substantially adopted the language of Maryland Code (1951), Art. 93, § 163.[5] That statute was originally enacted as Ch. 524 of the Acts of 1927 and then codified as Md.Code (1927), Art. 93, § 153A. The language vesting the exclusive right to sue on behalf of a minor in the hands of the custodial parent was introduced by amendment in the House Judiciary Committee to House Bill 281, a bill entitled " 'Parent and Child', relating to the natural and testamentary guardianship of minor children and to parental rights in general." 1927 House Journal at 212. The amendment provided that a mother with sole custody of a tortiously injured child had the exclusive right to

---

4. In 1974, the rule was amended to change "mother" to "parent".

5. Maryland Code (1951), Article 93 § 163 provided:

"In any and all cases where a tort shall be alleged to have been committed against any infant, and said infant is in the custody of its mother, the mother, in the first instance shall have the right to institute suit against the alleged *tort-feasor* or *tort-feasors* for and on account of such alleged tort; provided, however, that if the mother, within six months after the commission of the alleged tort, shall have *failed to institute suit as aforesaid,* then any person interested in said child, after having first given notice to its mother, by registered mail at her last known address, shall have a right to institute suit as next friend to such infant.

bring an action within three months of the injury. House Journal at 1292. The bill passed the House and was transmitted to the Senate where the Judicial Proceedings Committee expanded the custodial mother's window of exclusive right to sue from three months to six months, an amendment accepted by the House. 1927 House Journal at 1619.

Former Rule 205d, which we also adopted in 1957, was derived from Md.Code (1951), Art. 16, § 180 which provided:

"All infants and other persons under any disability to sue, may sue by their guardian or committee, if any, or by their *prochein ami;* subject, however, to such orders as the court or judge thereof may direct for the protection of infants and other persons; but before the name of any person shall be used in any suit to be instituted as next friend of any infant or other party, or as relator in any information, such person shall sign a written authority to the solicitor for that purpose, and such authority shall be filed with the bill or other proceeding."

The function of the next friend, or *prochein ami*[6], has its genesis in ancient English statutory' law. The first statute permitting a next friend to sue on behalf of infants was promulgated by Parliament as 3 Edw. 1, Cap. 48 (1 Westminster 48) in 1275 and was limited to those cases where the guardian had acted to bar his ward's cause of action. In 1285, Parliament extended the right of a next friend to sue on behalf of an infant to all actions by 13 Edw. 1, Cap. 15 (2 Westminster 15). As was explained in J.H. Thomas's arrangement of Lord Coke's *First Institute:*

"At common law, infants could neither sue nor defend, except by *guardian;* by whom was meant, not the guardian

---

6.  "PROCHEIN. L. Fr. Next. A term somewhat used in modern law, and more frequently in the old law; as *prochein ami, prochein cousin.* Co. Litt. 10.

PROCHEIN AMI. (Spelled, also, *prochein amy* and *prochain amy* ). Next friend. As an infant cannot legally sue in his own name, the action must be brought by his *prochien ami;* that is, some friend (not being his guardian) who will appear as plaintiff in his name. Black's Law Dictionary, Revised Fourth Edition, (1968).

of the infant's person and estate, but either one admitted by the court for the particular suit on the infant's personal appearance, or appointed for suits in general by the king's letters patent. But this rule was found inconvenient, it sometimes happening, that an infant was secreted by those having legal custody of him, and so prevented from applying to have a guardian *ad litem* appointed. Hence was seen the necessity of permitting any persons to litigate for the infant's benefit, who should be disposed to risk the expense. On this principle the Statute of Westminster the first enables any one to sue as *prochein amy* for an infant in an assize, where the infant himself is essoigned by his guardian, or otherwise disturbed from suing the assize. The statute of Westminster the second extended this provision, by permitting the *Prochein amy* to sue in *all* actions; and though in this statute, as well as in the former, eloignment of the infant was mentioned, yet by construction it is not deemed necessary, but the *prochein amy* may sue, whether that circumstance occurs or not, it being considered merely as an instance of the necessity of the case, and as such only taken notice of by those who framed the statute."

J.H. Thomas, *Lord Coke's First Institute of the Laws of England* 199 n. 29 (1827).

13 Edw. 1, Cap. 15 was one of the "statutes found applicable and proper to be incorporated" into the laws of Maryland when the first Maryland Constitution was adopted in 1776. Art. 5 Declaration of Rights (1776); *Kilty's English Statutes To Be In Effect In Maryland* 212 (1811). *See also* 1 John P. Poe, *Pleading and Practice in Courts of Common Law,* § 313 (Herbert T. Tiffany ed., 5th ed.1925); Ward B. Coe, *Alexander's British Statutes in Force in Maryland,* 158–61 (2d ed.1912). Pursuant to section 18 of Article IV of the Maryland Constitution permitting this Court to promulgate rules of procedure in equity cases,[7] General Equity Rule 10 was pro-

---

7. In 1883 § 18 of Article IV of the Maryland Constitution provided: "It shall also be the duty of said Judges of the Court of Appeals, as soon after their election as practicable, to devise, and promulgate by

mulgated in 1883 providing that "all infants and other persons under any disability to sue may sue by their guardian or committee, if any, or by their *prochein ami;* subject, however, to such orders as the court or judge thereof may direct for the protection of infants and other persons." *In re Paca*, 140 Md. 45, 116 A. 847 (1922). The provision was subsequently adopted as Md.Code (1888), Art. 16, § 125. The provision appeared in the same form continuously until it was repealed by ch. 399, § 1, of the Acts of 1957. The provision was incorporated into the Maryland Rules of Procedure as Md. Rule 205d the same year.

We have had the opportunity to discuss the role of the next friend representing a minor in Maryland. In *Deford v. State, Use of Keyser*, 30 Md. 179 (1869), we said:

"The *prochein ami* is, in contemplation of law, admitted by the court to prosecute for the infant; though, according to the practice of our courts, never by any actual order passed for that purpose. He becomes an officer of the court, and subject to its orders and direction; and whether there be a guardian or not, appointment by a different authority, makes no difference, and does not affect the authority of the *prochein ami* to prosecute for the infant. He stands very much in the relation of an attorney to the case, and as it is supposed that he is appointed by the court, it is competent at any time for the court to revoke his authority and remove him, and if it be necessary, to appoint another in his place."

*Id.* at 199 (citation omitted). *See also Reichard v. Izer*, 95 Md. 451, 52 A. 592 (1902); *Trahern v. Colburn*, 63 Md. 99 (1885); *B. & O. R.R. Co. v. Fitzpatrick*, 36 Md. 619 (1872).

---

rules, or orders, forms and modes of framing and filing bills, answers, and other proceedings and pleadings in Equity; and also forms and modes of taking and obtaining evidence, to be used in Equity cases; and to revise and regulate, generally, the practice in the Courts of Equity of this State, so as to prevent delays, and to promote brevity and conciseness in all pleadings and proceedings therein, and to abolish all unnecessary costs and expenses attending the same. And all rules and regulations hereby directed to be made, shall, when made, have the force of Law, until rescinded, changed or modified by the said Judges, or the General Assembly."

In one of the earliest reported American cases interpreting 13 Edw. 1, Cap. 15, the Connecticut Supreme Court's decision in *Apthorp v. Backus*, 1 Kirby 407 (1788) reflects the long-standing view regarding the duty of the next friend and the court in overseeing the exercise of that duty. There a suit was brought on behalf of Henrietta Apthorp, a minor, by her next friend and guardian, Perez Martin, an attorney, to recover land purchased by her father, Stephen, since deceased, in Chelsea in 1768. The case was heard by a jury which returned a verdict for the plaintiff. The defendant appealed, challenging the appointment of the next friend. The court stated:

"If, however, the suit and appearance are considered as by *prochien amy*, because the term *next friend* is also used in the declaration, and may denote the special kind of guardianship intended, still they are good: For though we have no statute, as there was originally in England, authorizing suits by *prochein amy*, yet long practice, and the reason of the case, are sufficient. It is for the benefit of infants who have no guardians, or such as from particular circumstances cannot or will not sue for them, as the case may require, to admit their suits by *prochein amy*, whose power and responsibility relative thereto, are the same as guardians: And there can be no danger to the infant from such practice; for the court under whose inspection the suit is prosecuted, is bound to take care for the infant; and if the *prochein amy* is not a responsible and proper person, or misconducts the suit, or institutes one not apparently for the benefit of the infant, will displace him, and, if need be, appoint another.

"It is, indeed, the duty of Judges of Probate to see that infants who need guardians have them; but, through want of information, or for other reasons; they frequently fail to do it. Their neglect should not prejudice the infant, or deprive him of the benefit of a friend, who may be willing to step in and protect him in a particular suit; and if the infant does not happen to live or reside within any of their respective districts, as is the case here, they are not autho-

rized by statute to appoint a guardian for him. If the infant in this case had a guardian by whom she might have sued, and has not, it must have been taken in abatement, if at all."

*Id.* at 410.

We have been unable to find any prior decision of this Court discussing the appropriate sanction to apply in the case of a next friend who neglects his or her duties to prosecute a suit on behalf of a minor. In the case of *In re Paca, supra,* however, we considered the issue of the removal of a committee to a *non compos mentis* where the committee had a conflict of interest in litigation arising from a will in which the *non compos* had a competing interest. There the Court applied Md.Code (1888), Art. 16, § 125 [8], holding:

"One of the principal objects of permitting suits in the alternative, where there is a committee, was doubtless to provide for just such a case as this, where the committee's personal interest is in conflict with that of the lunatic, or for some reason he ought not to be permitted to control the suit."

*Id.* at 51, 116 A. at 849.

In this century, courts in several states have dealt with the issue of the appropriate sanction to be applied where a next friend of a minor fails to cooperate with discovery. In *McLaughlin v. Beyer,* 181 Ala. 427, 61 So. 62 (1913), the Supreme Court of Alabama held that the trial court abused its discretion by dismissing with prejudice a minor's action where the next friend failed to answer interrogatories propounded by the defendant. The court reversed and permitted the minor

---

**8.** Md.Code (1888) Art. 16, § 125 provided:

"All infants and other persons under any disability to sue, may sue by their guardian or committee, if any, or by their *prochein ami;* subject, however, to such orders as the court or judge thereof may direct for the protection of infants and other persons; but before the name of any person shall be used in any suit to be instituted, as next friend of any infant or other party, or as relator in any information, such person shall sign a written authority to the solicitor for that purpose, and such authority shall be filed with the bill or other proceeding."

to bring the action within the three year statute of limitations after reaching the age of majority. The court said:

> "We do not think the plea of the statute of limitations of one year was availing as a defense to this action. The plaintiff was clearly within the protection of section 4846 of the Code, which allows infants three years after becoming of age, as the period by law for the bringing of the action. The record shows that she was yet an infant when this action was brought. We do not think that she was barred by the act of her next friend in instituting a former suit within the period, which he allowed to be dismissed on account of his failure to answer interrogatories propounded to the plaintiff. The neglect or dereliction of a next friend, in the prosecution of a suit or in allowing a dismissal thereof, ought not to be allowed to prejudice the rights or remedies of the infant, and such seems to be the weight of the authority on the subject. *Collins v. Gillespy,* 148 Ala. 558, 41 So. 930; *Tucker v. Wilson,* 68 Miss. 693, 9 So. 898. He has no power or authority to settle or compromise the suit, and, if he cannot do this, surely his allowing the suit to be dismissed ought not to bar his right of action which he otherwise would have had."

*Id.* at 437, 61 So. at 65 (citations omitted).

Later, in *Irwin v. Alabama Fuel & Iron Co.,* 215 Ala. 328, 110 So. 566 (1925), the Supreme Court of Alabama held that while the court had the duty to protect the minor from harsh results, it would not permit a collateral attack of an earlier final judgment. The next friend alleged that a previous next friend suing on behalf of a widow and unborn child as sole distributees of the estate of the husband and father who died in a work-related accident acted in a fraudulent manner arising from his confidential relationship with the defendant employer. Recognizing that the collateral action was barred by res judicata, the court went on to differentiate its holding in *McLaughlin,* stating:

> "The failure or neglect of the next friend to properly follow up and prosecute the equity suit, if such be true as set up by surrejoinder, cannot avoid the effect of the decree

on collateral attack. True, a next friend who assumes to represent and protect the rights of an infant occupies a fiduciary relation. He owes the infant good faith and diligence. The court also has a duty in conserving the rights of infant litigants. Because of the fiduciary or trust relation assumed, a flagrant neglect of duty, resulting in the sacrifice of the infant's rights, may be a fraud, which, if participated in by the opposing party, may furnish ground for relief in equity. But unless set aside in a direct proceeding, the decree remains and must be given all the force the law accords a valid judgment. Moreover, no fraud in the procurement of the decree is averred. At most, the record merely shows that after tendering an issue by the bill and joinder in issue by answer, the complainant neglected to take proof, if any was available and left it open to respondent to proceed according to the rules of practice in bringing the cause to a hearing and decree on the merits.

"The policy of the law demands that the effects of judgments be mutual; that an infant, in court in the manner provided by law, be bound by the decree duly rendered as any other party. Any modification of such rule to meet the exigencies of a particular case would open the door to greater evils than that sought to be avoided.

"*Mclaughlin v. Beyer* was a case in which the suit was dismissed because of failure of the next friend to answer interrogatories propounded under the statute. The record affirmatively showed there was no trial on the merits, but a dismissal of the suit, instead of a removal and dismissal of the next friend, for his personal contempt of court. It is not an authority for the proposition that a decree on merits can be collaterally assailed upon the ground that the next friend might have conducted the suit to better effect."

*Id.* at 333–34, 110 So. at 570 (citation omitted). *See also Citizens Walgreen Drug Agency, Inc. v. Gulf Ins. Co.,* 282 Ala. 648, 213 So.2d 814 (1968); and *Alexander v. Alexander,* 227 Ala. 322, 324, 150 So. 142 (1933).

The Illinois courts have established a policy regarding suits negligently prosecuted by a next friend on behalf of a minor.

In *Severs v. Country Mut. Ins. Co.*, 89 Ill.2d 515, 61 Ill.Dec. 137, 434 N.E.2d 290 (1982), the Supreme Court of Illinois stated:

> "This court long ago observed that '[a] child with a meritorious cause of action but incapable of initiating any proceeding for its enforcement will not be left to the whim or mercy of some self-constituted next friend to enforce its rights.' This concern for minors' rights has been a continuing one: 'Minor litigants are, of course, entitled to special protection by the courts, particularly to see that their rights are protected even from the neglect of their representative in order to do substantial justice.' Indeed, this court's decisions make it clear that the public policy of this State requires that '... a minor should not be precluded from enforcing his rights unless clearly debarred from so doing by some statute or constitutional provision.'"

*Id.* at 520–21, 61 Ill.Dec. at 139, 434 N.E.2d at 292 (citations omitted). In *Brandon v. DeBusk*, 85 Ill.App.3d 645, 41 Ill. Dec. 1, 407 N.E.2d 193 (1980), minor children sued for personal injuries through their father and next friend. The action was dismissed by the trial court for failure or the next friend to comply with discovery in the form of interrogatories and requests for production of documents. The plaintiffs sought to vacate the dismissal. When the trial court denied the motion, the plaintiffs appealed. In reversing the trial court, the appellate court explained the policy regarding protection of minors where the next friend neglects his or her duties:

> "Minor litigants are, of course, entitled to special protection by the courts, particularly to see that their rights are protected even from the neglect of their representative in order to do substantial justice. The principle has been applied to discovery disclosure rules. Even where minors are not involved the drastic sanction of dismissal for failure to comply with discovery should only be invoked where the plaintiff shows a deliberate and contumacious disregard of the court's authority. It follows that where minors are involved alternative sanctions should even be more extensively pursued."

*Id.* at 648, 41 Ill.Dec. at 3–4, 407 N.E.2d at 195–96. *See also Urbish v. 127th Judicial District Court,* 708 S.W.2d 429, 431– 32 (Tex.1986) ("When minors sue, trial courts have the responsibility to protect the minor's best interests. As part of this responsibility, trial courts are authorized to replace next friends and attorneys when it appears to the court that either has an interest adverse to the minor. The trial court's decision is within its discretion. When deciding whether to replace a next friend or attorney, trial courts should consider only the minor's best interest; the interest of the next friend or the attorney are irrelevant"); *Lee v. Gucker,* 16 Misc.2d 346, 186 N.Y.S.2d 700, 702 (1959) (where guardian ad litem refuses to accept settlement offer in best interest of minor plaintiff, court has power to remove guardian ad litem in order to protect interests of infant); *State ex rel. Hurd v. Davis,* 226 Ind. 526, 534, 82 N.E.2d 82, 86 (1948) ("But no duty is cast upon the court sua sponte to examine minutely as to the competency or responsibility of the next friend. If after the parties are before the court, either by voluntary appearance or as a result of the service of process, incompetency or irresponsibility of the next friend is established in a legal way, the court may remove her and permit a suitable person to be substituted, and this must be done 'without prejudice to the progress of the action.' ").

The English courts have also had opportunity to discuss the problem of the next friend who fails to act in the interest of the minor he or she represents. In *Ward v. Ward,* 3 Mer. 706, 36 E.R. 271 (1813), Lord Chancellor Eldon wrote:

"The court will change the next friend of an infant, if he will not proceed in the cause; or it must be submitted to the Court, whether it is a proper cause to go on with. Certainly a solicitor ought not to attach without orders from his client; but if that client is next friend of an infant, and the solicitor regularly takes that step in course of process, and the next friend comes here (as in this instance he did) and moves to discharge it, it is a question, whether the better course is not to refer it to the Master, to see if it is fit, that the next friend should continue so any longer."

In *Russell v. Sharpe,* 1 Jac. & W. 483, 37 E.R. 452 (1820), the court wrote:

> "If there be any thing wrong, the next friend must be looked to. If the next friend, or the guardian of an infant does not do his duty, or if any other sufficient ground be made out, the Court will allow him to be removed; but as long as he continues, he is considered responsible."

In *Dupuy v. Welsford,* 42 L.T. 730, 28 W.R. 762 (1880), Vice Chancellor Bacon wrote:

> "I am surprised to hear such an argument as that which has been addressed to me on behalf of the next friend. I thought it was one of the rights of the Queen's subjects to have a suit prosecuted to the fullest extent allowed by law. In the case of infants, there is an instrument called a next friend. One of the rights which the plaintiffs are entitled to is the full right of appeal. What law gives the next friend the power to deprive the children of that right of appeal? If they were adult and wished to appeal they could do so. If the plaintiffs wish to appeal, why should the next friend say they should not have the power to do so? He is only an instrument, and has no power to decide such questions as this. It is said that a next friend can only be removed for misconduct, but that is a mistake of practice. He can be removed for other causes. In this case, I am of opinion that opposing the appeal is equivalent to misconduct, and a sufficient ground for his removal. The matter must be remitted back to chambers to appoint another next friend, and the parties opposing must pay the costs of the summons."

## III.

Had the plaintiffs in this case been adults, the record and our decisions would clearly support affirming the trial court's dismissal with prejudice. We hold in the instant case, however, that the trial court abused its discretion under Rule 2–433 in applying the harshest of sanctions where neglect to comply with the rule lies with the next friend, an officer of the

court, not the minor plaintiffs. As the authorities recited above suggest, the trial court has a special duty to protect the rights and interests of the minor plaintiff who is represented by next friend to insure that the next friend does not prejudice those rights and interests through conflict of interest, fraud, or, in this case, neglect.

Rule 2–433(a) provides the trial court with several approaches to correcting the next friend's failure to comply with discovery requests short of dismissal with prejudice. Under Rule 2–202(b), upon finding that the next friend has breached her obligations to proceed with diligence under the rules, the trial court may properly remove that next friend and replace her with a new next friend, willing to risk the costs of litigation, to proceed with the cause of action. If no one can be found who is willing to take on that responsibility, the actions of the infant plaintiffs should be dismissed without prejudice so that the actions may be pursued by them when they reach their majorities.[9]

*JUDGMENT ON THE INDIVIDUAL CLAIM OF TONIA HANSON AFFIRMED, JUDGMENTS ON THE CLAIMS OF THE INFANT PLAINTIFFS REVERSED AND THE CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY THE APPELLEE.*

---

**9.** The facts of this case do not implicate Md.Code (1974, 1989 Repl. Vol.), § 6–405 of the Courts and Judicial Proceedings Article.