DAVID L. SHOOLMAN, trustee, *vs.* WALES MANUFACTURING
COMPANY & another.[1]

Suffolk.   January 4, 1954. — March 9, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILLIAMS, & COUNIHAN, JJ.

*Landlord and Tenant*, Assignment of lease, Rent. *Assignment. Agency*,
Ratification. *Equity Pleading and Practice*, Declaratory proceeding,
Taking bill for confessed.

In the absence of fraud, a sealed assignment of a lease delivered to the
assignee by the holder of the leasehold estate was not a mere sham
and was effectual to divest the assignor of the leasehold estate and
to terminate his liability for rent arising from privity of estate, even
though the assignment was given for the purpose of relieving him of
the burden of paying rent and the assignee did not intend to occupy
the leased premises. [214-216]
In a suit by the lessor under a lease to determine the liability of a de-
fendant corporation for rent, a contention that an assignment of the
lease by the corporation did not relieve it of liability for rent arising
from privity of estate because the officer who executed the assignment
in its behalf had no authority to do so could not properly be made by
the plaintiff where it appeared that the corporation had ratified the
act of the officer by notifying the plaintiff of the assignment at the
time it was given and by setting it up in the corporation's answer.
[216]
The final decree in a suit in equity for a declaratory decree should not
have dismissed the bill as against one of the defendants but should
have adjudicated the rights of the plaintiff as against that defend-
ant. [216]
An interlocutory decree taking the bill for confessed in a suit in equity
for a declaratory decree did not ensure a final decree favorable to the
plaintiff, but merely established as true the facts well pleaded and re-
quired the entry of the proper final decree on those facts. [216-217]

BILL IN EQUITY, filed in the Superior Court on June 21,
1950.
The suit was heard by *Cahill*, J.
*Joseph M. Hargedon*, (*Sumner J. Chertok* with him,) for
the defendant Wales Manufacturing Company.

---

[1] Elizabeth M. Farrell.

*Bernard Kaplan*, (*Herbert Abrams* with him,) for the plaintiff.

COUNIHAN, J.  This is a bill in equity for a declaratory decree under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, to establish the obligation of the defendant Farrell and of the Wales Manufacturing Company, hereinafter called Wales, to pay the plaintiff the rent reserved in a lease of the second floor of the building numbered 1165 Tremont Street, Boston.  The defendant Farrell filed no answer and the bill was taken for confessed as against her. Both the plaintiff and Wales agree to the existence of a controversy between them.

The evidence is reported and the judge filed what is termed "Findings and Order for Decree." [1]  There was also a finding of fact in the final decree. [2]  The final decree dismissed the bill as against Farrell and adjudged that Wales owed the plaintiff certain moneys and ordered execution to issue therefor.  Wales appealed from that decree which in our opinion was not correct.

The facts out of which the controversy arose appear not to be in dispute and may be summarized as follows:  On February 8, 1946, the plaintiff gave this lease to one Backner and one Weene, hereinafter called the lessees.  It was for a term of five years expiring April 30, 1951, at a yearly rental of $3,000 payable in equal monthly instalments of $250 in advance.  The lessees had a right to assign the lease only if the premises were to be used for the light manufacture of

---

[1] "I find that the alleged assignment in this case was a mere paper transaction; that the scheme by which . . . Wales sought to relieve itself of rent under the lease was a mere sham and pretense; that it is questionable that the assignment was ever legally delivered to . . . Farrell; that she never intended to occupy the premises nor operate any business of any kind in connection therewith, nor to pay rent; that she had no assets; that she had not received any income of any kind for a number of years; that her only intention was to accommodate her nephew who was attorney for Wales.  In addition, there is no evidence to warrant the court in finding that Cohen, who claims to have signed the alleged assignment, was ever authorized directly or indirectly to do so by the directors of the corporation."

[2] "That the alleged assignment from the . . . Wales Manufacturing Company to . . . Elizabeth M. Farrell of the lease on the premises, namely the second floor at 1165 Tremont Street, Boston, Massachusetts, was a sham and pretense and ineffectual as an assignment."

clothing. On or about December 30, 1947, the lessees assigned the lease to Wales, which took possession and carried on a business of manufacturing top coats until the latter part of April, 1950. It paid the rent reserved up to April 30, 1950. At least two weeks prior to April 29, 1950, Wales without notice to the plaintiff began to move all of its property on the leased premises to another building which it had acquired so that on April 29, 1950, the leased premises were vacant. On that day Elizabeth M. Farrell went to the leased premises with a Mr. Cooke, her nephew and an attorney for Wales, and one Cohen, the president of Wales. Mr. Cooke had with him the lease and certain other papers which he had prepared at the request of Wales. The lease, a copy of an assignment of it to Farrell, a letter from Farrell to Wales, and a copy of a letter from Wales to the plaintiff which was sent by registered mail, were in evidence as exhibits and have been properly certified for use before us. Wales admits that it caused the assignment and the other papers to be prepared and used for the purpose of divesting itself of possession of the leased premises and thus ending its obligation to pay further rent to the plaintiff. The assignment of the lease, a copy of which was in evidence because the original had been lost, was executed by Wales by its president, Cohen. A seal was affixed to the assignment and in it there was also a recital that it was under seal. See G. L. (Ter. Ed.) c. 4, § 9A. Cohen gave Farrell the lease, the assignment, and the keys to the building. Farrell gave Cohen a letter in which she acknowledged the receipt of the assignment, the lease and the keys and also stated that she had taken possession of the leased premises. On the same day Wales by a registered letter notified the plaintiff of the assignment. Farrell read the lease and the assignment when she received them but she admitted that she paid nothing for the assignment. She further admitted that she was without funds at the time, that she did not intend to occupy the premises for any purpose, and that she did not intend to pay the plaintiff any rent. What she did was done as a favor to Mr. Cooke who later paid

her $10 for her services. She knew, however, that she was assuming an obligation to pay rent.

The real question before us is whether this assignment of the lease in these circumstances effectually terminated the title to the leasehold in and possession of the leased premises by Wales. We are of opinion that it did.

In *Donaldson* v. *Strong*, 195 Mass. 429, at page 431, it was said, "The defendant being the assignee was liable by reason of privity of estate for the rent accruing during the time he was the owner of the leasehold interest. 'In such a case the liability of the original lessee does not depend upon privity of estate, for he has parted with his whole interest, but upon privity of contract, and continues during the whole term; while the liability of the assignee continues only during the term he holds the legal title to the leasehold estate under his assignment. When the privity of estate thus ceases, his liability to the lessor ceases.' . . . *Mason* v. *Smith*, 131 Mass. 510, 511." And further, "The assignee may destroy the privity of estate by divesting himself of the leasehold estate by assignment; and he may do this for the express purpose of relieving himself from the burdens of the lease. . . . Nor is notice to the lessor of the re-assignment necessary." At pages 431–432 it was said, "It is argued by the plaintiff that the facts do not show that Sheehy entered under the assignment. . . . But even if Sheehy had not entered, the result would be the same. The assignment was under seal and was delivered. In the absence of fraud the assignment under seal gives the assignee a title and possessory right." *Patten* v. *Deshon*, 1 Gray, 325, 329.

In the instant case the judge made no finding as to fraud and we do not think that fraud on the part of Wales may be inferred from the evidence. It was attempting to relieve itself of the burden of paying rent under the lease by divesting itself of the leasehold estate in and possession of the premises. If the language of *Donaldson* v. *Strong* just quoted still holds good, and in so far as we can discover it has not been reversed, what Wales did was perfectly legal.

The judge likewise made no finding as to the delivery of the assignment. He merely found that "it is questionable that the assignment was ever legally delivered to . . . Farrell." Such a finding falls far short of determining that no delivery of the assignment was made to Farrell. The evidence is sufficient to warrant a finding of good delivery and we so find. We do this under the familiar rule that, in our consideration of the facts, we are not limited to those recited in the findings of the judge. All the evidence is before us, and all questions of law, fact, and discretion are open for our decision. From the evidence we can find facts not expressly found by the judge. If convinced that he was plainly wrong, we can find facts contrary to his findings. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 83–84. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. *Warner* v. *Selectmen of Amherst*, 326 Mass. 435, 436.

The judge in his findings stated that the alleged assignment "was a mere paper transaction; that the scheme by which . . . Wales sought to relieve itself of rent under the lease was a mere sham and pretense," and in the final decree it was stated that "the alleged assignment . . . was a sham and pretense and ineffectual as an assignment." These findings were apparently based upon what was said in *Harmon, Wastcoat, Dahl Co.* v. *Star Brewing Co.* 232 Mass. 566, at page 569. But in that case there were special findings of the jury, made in response to questions submitted to them, that the assignment was never delivered to the alleged assignee nor was it accepted by him. It appeared also that he never took possession nor claimed the right to do so. There the assignments were left in the possession of the assignor's counsel and were never handed over to the assignee. In those circumstances, which differ substantially from what appears in the instant case, it was held that the evidence warranted a finding that the assignment was a mere paper transaction and the transaction was a mere pretense and sham, in an attempt to relieve the defendant from paying rent. The opinion in that case,

however, apparently ratified a portion of the judge's charge to the effect that the defendant had a right to assign the lease and could do so even though it desired "to avoid the load of the rent or other things." It is important to note too that in the case cited it does not appear that the assignment was under seal. Because of these differences we do not think that the *Star Brewing Co.* case is authority to support the decree in the instant case.

There is also further error in the finding of the judge that "there is no evidence to warrant the court in finding that Cohen, who claims to have signed the alleged assignment, was ever authorized directly or indirectly to do so by the directors of the corporation." No such authorization was necessary because Wales ratified the action of Cohen by notifying the plaintiff of the assignment and by setting up such assignment in its answer. If Wales was satisfied to have Cohen execute and deliver the assignment, "neither the plaintiff nor any other third party could raise any question as to his authority." *Shawmut Commercial Paper Co.* v. *Auerbach*, 214 Mass. 363, 366. "It is settled that one cannot accept the benefits of a transaction purporting to be done in his behalf and afterwards repudiate it." *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 68. See *United Beef Co.* v. *Childs*, 306 Mass. 187, 192.

It follows therefore that the final decree must be reversed and a new decree be entered declaring that Wales is discharged of all obligations under the lease between the plaintiff and the original lessees.

What we have said disposes of this bill on the merits as against Wales. There remains but one thing more. This is a bill for a declaratory decree. It should not have been dismissed as to Farrell. It should have been disposed of by the entry of a decree adjudicating the rights of the plaintiff against her as prayed for. *Foley* v. *Springfield*, 328 Mass. 59, 62. The taking of the bill as confessed as against Farrell did not ensure a decree for the plaintiff against her. "It only established as true the facts properly pleaded, and required the entry of whatever decree

those facts demanded." *Matek* v. *Matek*, 318 Mass. 677, 679.

Further proceedings are to be had in the Superior Court not inconsistent with this opinion to determine the legal status of Farrell with respect to said lease and to determine the amount of money, if any, due the plaintiff from Farrell.

Costs of this appeal are to be awarded Wales.

*So ordered.*