## HIMES *v.* DAY

[No. 261, September Term, 1968.]

*Decided June 11, 1969.*

*Motion for rehearing filed July 10, 1969; denied September 19, 1969, and opinion modified.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*J. Joel Woodey,* with whom were *Charles F. Quandt, William C. Stifler, III,* and *Niles, Barton & Wilmer* on the brief, for appellant.

*Eli J. Golden,* with whom was *Howard I. Golden* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The appellant (defendant below) appeals from a judgment by default entered against her individually, for failure on her part to file a responsive pleading in her individual capacity to a suit under the Declaratory Judgment Act (Code (1967 Repl. Vol.) Art. 31A) brought against her individually and as Administratrix of the estate of John Raulin, deceased. The case against the appellant in her administrative capacity has not yet been decided.

The appellee, Johanna Day, who is a sister of John Raulin, deceased, filed the suit against the appellant, a daughter of John Raulin, alleging a cause of action on four counts. The first alleged a contract whereby the defendant, Ethel M. Himes, as an individual, on October 8, 1962, promised the plaintiff that if she would assume the permanent care and custody of the appellant's father, John Raulin, who was then totally blind, she would compensate the appellee in the form of a residential property, free of any cost to the appellee, of a value not to exceed $20,000.00, whereupon the appellee assumed custody of and cared for John Raulin until his death, over three years later. The second count alleged a promise similar to the one contained in the first count, except it alleged that it was made by John Raulin to the appellee, whereby he agreed to purchase a residence not to exceed the value of $20,000.00, for the appellee and her husband

in return for her care of him. The third count merely recites the nature of the care, maintenance and services rendered by the appellee to John Raulin over a period of three years. The fourth count alleges that John Raulin shortly before his death and in contemplation thereof, and over the protests of Ethel M. Himes, demanded and took back into his possession a savings account book of the American Savings and Loan Association of Washington, D. C., and immediately thereafter declared that all money in said account, more specifically $56,289.85, was given to the appellee and that the passbook was given by the said John Raulin to the appellee.

The appellant had been granted letters of administration on the estate of John Raulin on December 10, 1965, by the Orphans' Court of Baltimore City, some fourteen months prior to the institution of this suit by the appellee.

The counts alleging the existence of a contract indicate similarities in the alleged contracts but do not show that the alleged contracts were in any way entered into on the same date or at the same time, nor do the counts allege any joint action or joint obligation on the part of Ethel M. Himes and the decedent John Raulin.

The appellant, in her capacity as Administratrix, filed both a general issue plea and a special plea. In her individual capacity, the appellant filed a motion on March 22, 1967, pursuant to Maryland Rule 323, to dismiss because of improper venue. It is undisputed that Ethel M. Himes is a resident of Montgomery County, that she does not carry on any business in Baltimore City or habitually engage in any vocation or employment there, and that no summons upon her in Montgomery County has been returned "non est." The court below on March 18, 1968, refused to grant appellant's motion to dismiss.

Shortly thereafter, on April 2, 1968, the attorneys for Ethel M. Himes requested by telephone and were granted by the attorney for Johanna Day "a few extra days" in which to file a plea for the appellant in her individual capacity. This conversation was confirmed by letter dated

April 5, 1968, and sent by the appellant's attorneys to counsel for the appellee. Such a plea was not filed.

On June 5, 1968, sixty days after the telephone conversation between counsel, and without notice to the appellant, the appellee moved for and was granted a default judgment against the appellant in her individual capacity. The appellant did not learn of the default judgment until her attorneys discovered it on the court docket on July 18, 1968. A motion to set aside the judgment was immediately filed by the defendant in her individual capacity along with responsive pleas. Judge O'Donnell refused to grant this motion and refused to accept the responsive pleas.

On appeal the appellant endeavors to have this Court review the issue of improper venue and the proposition that the appellant's general issue pleas and special pleas, made in her capacity as administratrix, inured to her benefit in her individual capacity. The issue of revenue was considered by the lower court prior to its refusal to grant the appellant's motion to dismiss on March 18, 1968. Furthermore we are of the opinion that implicit in the lower court's action of entering final judgment on June 6, 1968 was the rejection by the court of the contention that the general issue pleas and special pleas filed by the appellant in her capacity as administratrix could inure to her benefit in her individual capacity. No appeal was seasonably taken from the final judgment of June 6, 1968, and hence this Court cannot now consider either the issue of venue or the question that the general issue and special pleas filed by the appellant in her capacity as administratrix should have inured to her benefit in her individual capacity. Maryland Rule 812 a. We further note that the general issue pleas and special plea eventually filed by the appellant, in her individual capacity, were, like her motion to set aside the final judgment, filed considerably more than 30 days after the entry of the final judgment on June 6, 1968.

Thus, the only reviewable matter before this Court is whether the lower court on August 18, 1968, erred in

denying the appellant's motion to vacate the judgment by default obtained on June 6, 1968, entered for want of a plea by the appellant (defendant).

Before an enrolled judgment may be set aside there must be a clear finding of fraud, mistake or irregularity, Maryland Rule 625. Since the appellant has made no allegation of fraud nor has there been any finding of fraud, mistake or irregularity by the lower court, the court was correct in refusing to grant the appellant's motion to vacate the judgment by default. Indeed, even had the lower court determined that a meritorious defense existed, absent a finding of fraud, mistake or irregularity, the lower court was without discretionary power to vacate the judgment once it had become enrolled.

We think the issue in this case pertaining to the vacating of the default judgment is controlled by *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d 239 (1968), wherein Horney, J. writing for the Court stated:

> "As was pointed out in *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960) and in *Murray v. Fishman Construction Co.,* 241 Md. 538, 217 A. 2d 357 (1966), the trial court, besides requiring the party, who moves to set aside an enrolled judgment, to prove that he is acting in good faith and with diligence and that he has a meritorious defense, should also require a showing of such facts and circumstances as will establish the fraud, mistake or irregularity allegedly used to obtain the judgment sought to be vacated.
>
> "The finding of the lower court that some of the vouchers were in the name of a corporation and some were in the name of the defendant and another person was at most no more than an indication of error in several of the vouchers. A mere *error,* which in legal parlance generally connotes a departure from truth or accuracy, *State ex rel. Smith v. Smith,* 252 P. 2d 550, 555 (Ore. 1953) and *Gronseth v. Mohn,* 234 N. W.

603, 604 (S. D. 1931), is certainly not an *irregularity* (under Rule 625), which is usually defined as the doing or not doing of that, in the conduct of a suit at law, which, conformable with the practice of the court, ought or ought not to be done. *State v. Lazarus*, 65 S. E. 270, 272 (S. C. 1909) ; *State ex rel. Caplow v. Kirkwood*, 117 S.W.2d 652 (Mo. 1938) ; *Babb v. City of Wichita*, 241 P. 2d 755 (Kan. 1952) ; *Black's Law Dictionary* (4th Ed.). [Emphasis in original.]

"We also point out that the entry of the default judgment, pursuant to Rule 310 b, by the plaintiff without giving notice to the defendant did not constitute an 'irregularity' within the meaning of Rule 625. *Pumphrey v. Grapes*, 215 Md. 573, 138 A. 2d 916 (1958). Nor was the attorney for the plaintiff obliged to advise the attorney for the defendant of his intention to enter judgment by default. See Rule 306 b." *Id.* at 478-479.

The appellant also seeks to invoke Maryland Rule 605 a which provides:

"Where more than one claim for relief is presented in an action, whether as an original claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

and relies on *Queen City Enterprises, Inc. v. Independent Theatres, Inc.,* 230 Md. 387, 187 A. 2d 459 (1963). However, we do not think either Rule 605 a (modeled after Rule 54 (b) F.R.C.P.), or *Queen City, supra,* is apposite.

In *Queen City, supra,* the plaintiff sued two defendants on the same debt, one defendant having been the original debtor and the other a purchaser from the original debtor under a "Bulk Sale." Thus, final adjudication between the plaintiff and one of the defendants was partially dependent upon the determination of the rights as between the plaintiff and the other defendant. This is to be distinguished from the instant case, wherein the right of the plaintiff to recover from the defendant in her capacity as administratrix, is completely independent of her right to recover from her as an individual, since the plaintiff's right to recover against the defendant in her respective capacities arises from separate and independent obligations, thereby giving the plaintiff the right to recover from the defendant in both capacities, rather than being limited to one satisfaction.

As a further illustration of the applicability of Rule 605 a, which also serves to demonstrate its inapplicability to the instant case, we cite the *per curiam* opinion of this Court in *Harkins v. August,* 251 Md. 108, 246 A. 2d 268 (1968). *Harkins* involved a suit sounding in both contract and tort arising out of one cause of action, which was an alleged act of medical malpractice, against multiple defendants. This Court, *sua sponte,* raised the issue of whether or not the appellants had a right of appeal from an order of the lower court sustaining demurrers, without leave to amend, to those counts smacking of contract, and which order also granted judgment on the contract counts in favor of two of the three defendants. The order expressly stated that the judgments were without prejudice to the plaintiffs to maintain action against all defendants as to those counts in the declaration grounded in tort. This Court in holding that the order sustaining the demurrers, without leave to amend, was in that case, an interlocutory order and not a final judgment, stated:

> *"There was a judgment in the instant case which adjudicated less than all the claims arising out of the same cause of action;* however, there was no express determination that there was no just reason for delay in rendering judgment. We therefore think, considering Rule 605 a and the whole declaration, that the judgment on the contract counts in this case, leaving the tort counts remaining, was in effect an interlocutory judgment as to the determination of the cause of action." (Emphasis supplied.) *Id.* at 111.

See also *Durling v. Kennedy,* 210 Md. 549, 554, 123 A. 2d 878 (1956).

The distinction between *Harkins, supra,* wherein there were multiple claims against multiple parties arising out of one cause of action and the case at bar, where the claims against the multiple parties are independent and separate claims is so obvious as not to require elaboration. We think the case at bar comes within the purview of Maryland Rules 313 d (1) and 313 e which provide:

> "Rule 313 d (1). Separate claims involving different plaintiffs or defendants or both may be joined in one action whenever any substantial question of law or fact common to all the claims will arise in the action or for any other reason the claims may conveniently be disposed of in the proceeding; the claims may be joint, several, or in the alternative, as to plaintiffs or defendants or both.
> "Rule 313 e. Where the action involves more than one plaintiff or defendant or both, judgment may be given for one or more of the plaintiffs according to their responsive right to relief, and against one or more of the defendants according to their respective liability."

The appellant argues that in the instant case the judgment by default was an interlocutory judgment and hence

Rule 625 should not apply. This contention is based on the fact that a judgment by default may require extension by way of proof of damages or some other inquiry by the court, Maryland Rule 648. However, this extension of the judgment was never intended to affect the finality of a judgment by default as to the question of the liability of the party against whom it is obtained. A reading of both *Berwyn Fuel Co., supra,* and *Tasea Investment Corp., supra,* leaves no doubt in the Court's mind but that a judgment by default is a final determination as to liability. See also *Abrams v. Gay Investment Co.,* 253 Md. 121, 251 A. 2d 876, *Sheehi v. Saia,* 250 Md. 198, 242 A. 2d 174 (1968).

The remaining issue concerns the question of whether a judgment by default is capable of resolving issues raised by a declaratory judgment action. The appellant claims that such a judgment is not consonant with a declaratory judgment, is ineffectual in resolving the issues raised by a declaratory judgment action and is hence a nullity. Again, we do not agree. We think Judge O'Donnell's observation in the court below, that the declaratory judgment procedure is available at law as well as in equity, is quite correct. (Code (1967 Repl. Vol.), Art. 31A, §§ 1, 2, 3 and 6.) In *Schultz v. Kaplan,* 189 Md. 402, 56 A. 2d 17 (1947), our predecessors stated:

> "It was pointed out in the case of *Caroline Street Permanent Building Association No. 1 v. Sohn, supra,* 178 Md. 434, at page 444, 13 A. 2d 616, decided in 1940 under the Acts of 1939, Chapter 294, that the object of the declaratory judgment act is to supplement and enlarge procedural relief in a field not wholly or adequately occupied by subsisting remedies of law and equity. The amendment of 1945 definitely makes that act concurrent with existing remedies both at law and in equity." *Id.* at 409.

See also cases cited in M.L.E. *Declaratory Judgments,* § 31 at 213.

The judgment in this case, although imprecise, has the

effect of fixing liability on the appellant on those counts in the declaration which are applicable to her and establishes the fact that the appellee is entitled to recovery. The nature and form that this relief should take will require a review by the lower court of the facts properly pleaded and perhaps the taking of additional testimony, before the rights of the appellee under the judgment become articulate. Accordingly, for this purpose and this purpose alone, we shall remand the case, while affirming the lower court's action in refusing to grant the motion to vacate the judgment by default. See *Anderson, Declaratory Judgments*, 2d Ed., § 418, in which is cited *Shoolman v. Wales Mfg. Co.*, 331 Mass. 211, 118 N.E.2d 71 (1954).

> *Denial of motion to vacate judgment by default, affirmed; remanded for declaration of relief under judgment in conformity with the views expressed in this opinion, appellant to pay costs.*