520 A.2d 371

**Kevin Derrick ADAMS**

v.

**Charisse Annette MALLORY.**

**No. 49, Sept. Term, 1986.**

Court of Appeals of Maryland.

Jan. 30, 1987.

454

Leonard S. Bernstein, Baltimore, for appellant.

Joseph B. Spillman, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty., for Baltimore City and Robert M. Moss, Asst. State's Atty., on the brief), Baltimore, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

COUCH, Judge.

The essential question presented herein is whether a default judgment on the issue of paternity may be entered *ex parte* against an alleged father in a paternity proceeding as a sanction for failure to answer or otherwise respond to interrogatories, which included questions directed to the issue of paternity.[1]

I

The facts of this case have been presented in an agreed statement. On July 11, 1984, Charisse A. Mallory (appellee), a single mother, filed a paternity petition in the Domestic Relations Division of the Circuit Court for Baltimore City. In the petition, she named Kevin D. Adams (appel-

---

1. The question as framed by appellant in his petition for certiorari and in his brief is: "Can a Defendant in a Maryland Paternity Proceeding be required to answer Interrogatories?" We limit our discretionary review to the propriety of entering a default judgment under the circumstances here. The matter is discussed in Part IV, *infra.*

lant) as the father of her minor child, who was born on June 18, 1984. Before a Domestic Relations Division hearing examiner, appellant denied paternity and stated that he would secure legal counsel. The case was then referred to the State's Attorney's Office for Baltimore City to schedule a court hearing.

On October 5, 1984, the case came before the Circuit Court for Baltimore City (Watts, J.). The appellant failed to appear, and the court postponed the proceedings until October 17.[2] The court signed a warrant for appellant, which would be forwarded to the sheriff if he failed to appear for the next hearing. The appellant appeared in the Assistant State's Attorney's office on October 8th, and was given a summons to appear on the 17th.

On October 17th, the parties appeared before Judge Watts. The appellant again denied that he was the father of the minor child and requested a blood test. The appellant also alleged that he was indigent and could not afford the test. The court ordered the Mayor and City Council of Baltimore City to advance the costs for the test, which appellant would have to reimburse if the court determined that he was the father. The blood test was scheduled for November 7th, but again the appellant did not appear. After another court hearing before Judge Watts on November 28th, when the court again indicated that a warrant would be forwarded to the sheriff if appellant did not show up for the next scheduled blood test, all parties appeared at the Baltimore Rh Typing Laboratory on December 10th.

On January 18, 1985, the parties were back in the circuit court. The blood test results did not exclude the appellant, and indicated a probability of paternity of 83.44%.[3] The appellant reiterated his denial of paternity, and requested a

---

**2.** The appellant called Judge Watts's chambers and said he did not appear because his foot had just been operated on.

**3.** The blood test results could not be used as evidence against the appellant at a subsequent trial. *See* Md.Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1029(e).

jury trial, which was scheduled for April 24, 1985. The appellant was told of his right to have his attorney present or to have an attorney appointed for him if he could not afford his own.

Thereafter, appellee's counsel [4] sent interrogatories to the appellant.[5] When no response was received by March 11, appellee's counsel sent a letter to appellant indicating that a response was overdue and should be received within five days or a default judgment would be requested.[6] Receiving no answer, appellee filed a Motion for Default Judgment or Sanctions on March 21 and mailed a copy to appellant. Five days later, appellant indicated to the Assistant State's Attorney that he never received the interrogatories. He was given a copy and told to secure an attorney and to respond to the document.

On the scheduled trial date (April 24, 1985), the appellant, without counsel, asked for a postponement. The case was referred to Judge Ward, who denied the request. The appellant reiterated his request later that afternoon before Judge Hammerman, arguing that he had just secured an attorney. The Assistant State's Attorney asked the court to rule on the default judgment motion. After considering arguments, the court granted appellee's request for a default judgment for appellant's "failure to answer interrogatories."

An *ex parte* hearing was held approximately one month later—May 29, 1985—to take testimony in support of the default judgment and to determine the relief to which appellee was entitled. The appellant was not informed about this hearing, and thus he was not present. After

---

4. The State's Attorney for Baltimore City represented appellee in this case. *See* Md.Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1011(a).

5. The interrogatories were filed with the Paternity Division of the Circuit Court for Baltimore City on February 8, 1985.

6. The letter also indicated that an attorney may be helpful in assisting the appellant to answer the interrogatories.

appellee presented witnesses and testimony on her behalf, a Decree Determining Paternity was signed. The Decree declared the appellant to be the father of the minor son and granted custody of the child to appellee. The Decree further ordered "that all other issues including visitation, child support, reimbursement of hospital costs ... reimbursement of blood test costs" be postponed until a subsequent hearing when the appellant would be present.

On August 14, 1985, the parties appeared in the circuit court (Friedman, J.). Represented by an attorney, the appellant again argued that he was not the child's father, and that he never received a jury trial on that issue. According to the Agreed Statement of Facts, the court indicated that it was too late to raise such issues. The default judgment and the Decree Determining Paternity had become enrolled, and there was no fraud, mistake or irregularity. The court noted that the appellant should have appealed or filed a motion within thirty days to set aside the default judgment. The court then proceeded to take testimony on the remaining issues to be resolved. A Modified Decree Determining Paternity was signed.[7]

On September 13, 1985, the appellant filed an appeal to the Court of Special Appeals, which was decided in an unreported per curiam opinion (No. 1421, September Term, 1985, filed March 4, 1986). The appeal was limited to the issue of paternity. That court concluded, for reasons hereinafter discussed, that the appeal was untimely. We granted appellant's request for a writ of certiorari. We now reverse the judgment of the Court of Special Appeals.

We shall hold that in a paternity proceeding under Family Law Article, Title 5, subtitle 10, paternity may not be

---

7. The Modified Decree stated, *inter alia,* that the custody and guardianship of the minor child would remain with the appellee, subject to reasonable visitation rights; the appellant would pay child support and hospital costs, and reimburse the Mayor and City Council of Baltimore for blood test costs.

decided against the alleged father by a default judgment as a sanction for failure to provide discovery.

## II

■ We are presented with two threshold issues. Appellee contends initially that the appellant never argued before the circuit court that it lacked the power to enter a default judgment for a failure to answer interrogatories. Md.Rule 885. However, appellee's counsel conceded during oral argument that a request was made to strike out the default judgment during the August 14th hearing before Judge Friedman. We think that appellant's request was adequate to raise the issue before the circuit court.

The second threshold issue concerns the timeliness of the appeal to the Court of Special Appeals. Appellee has moved to dismiss in this Court for a reason which differs from that given by the Court of Special Appeals. Appellee emphasizes the default nature of the judgment, while the appellate court emphasizes the subject matter of the present action (i.e., paternity).

■ Appellee relies on *Himes v. Day,* 254 Md. 197, 254 A.2d 181 (1969), which held, under the rules of procedure then in effect, that a default judgment on the issue of liability alone, entered for failure to respond to a complaint, was a final, not an interlocutory, judgment. Under this holding, the entry of a default was appealable before the extension of damages. The holding of *Himes v. Day* has been changed by the Maryland Rules of Procedure effective July 1, 1984. Under Maryland Rule 2–613(a), the default judgment of prior practice is now "an order of default." [8]

---

8. The full text of Md.Rule 2–613 is the following:
    (a) *Order of Default.*—If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.
    (b) *Notice.*—Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate

Thereafter, the court "may enter a judgment by default if it is satisfied" concerning its jurisdiction and the mailing of a required notice. Md.Rule 2–613(e). Under this rule, an order of default is no longer appealable as a final judgment. *See O'Connor v. Moten,* 307 Md. 644, 647 n. 2, 516 A.2d 593, 594 n. 2 (1986). Ordinarily, the court will have to determine the relief to be awarded against the defaulting party before there is a final judgment on the claim involved in the default. Rule 2–613(e) makes this clear by providing that "[i]f, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may ... conduct hearings[.]"

In the instant case, however, the default judgment was entered as a sanction for a failure of discovery. Md.Rule 2–432(a) provides in part:

---

the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

(c) *Motion by Defendant.*—The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(d) *Disposition of Motion.*—If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

(e) *Entry of Judgment.*—If a motion was not filed under section (c) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (b) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

(f) *Finality.*—A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted.

A discovering party may move for sanctions under Rule 2–433(a), without first obtaining an order compelling discovery ... if a party fails to file a response to interrogatories ... after proper service. Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2–403.

Rule 2–433(a) then provides in relevant part that

the court, if it finds a failure of discovery, may enter ...

. . . .

(3) An order ... entering a judgment by default against the failing party.... If, in order to enable the court to enter default judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may ... conduct hearings[.]

■ We hold that the rule of *Himes v. Day* does not apply to an order of default entered as a discovery sanction under Rule 2–433. Rules 2–613 and 2–433 both contemplate that it may be necessary to conduct further proceedings "in order to enable the court to enter default judgment," Md. Rule 2–433(a)(3), or "to enter judgment," Md.Rule 2–613(e). Consequently, Judge Hammerman's order of April 24, 1985, which purported to enter a judgment of default without determining any relief is not a final judgment under the Maryland Rules.

■ The order of May 29, 1985, entered by Judge Angeletti cannot be a final judgment. If the determination of paternity is viewed simply as a determination of liability which forms the foundation for other relief (e.g., orders directing payment of support and medical expenses), then the May 29, 1985 order had no more finality than did the simple declaration of default on April 24, 1985. On the other hand, the May 29 order might be viewed as the final determination of the claim that appellant was the father of the child. Under that view, the May 29 order did not finally

determine all of the claims in this multiple claims case. Although the May 29 order also granted custody and guardianship of the child to the appellee, the order expressly reserved "all other issues including visitation, child support, reimbursement of hospital costs to the Medical Assistance Program and reimbursement of blood test costs[.]" A final judgment for purposes of appeal was not entered until all of the remaining claims for relief were decided on August 14. Md.Rule 2–602.[9]

■ The Court of Special Appeals based its conclusion that this appeal was filed too late entirely on section 5–1038 of the Family Law Article. That section reads:

(a) *Declaration of paternity final.*—Except in the manner and to the extent that any order or decree of an equity court is subject to the revisory power of the court under any law, rule, or established principle of practice and procedure in equity, a declaration of paternity in an order is final.

(b) *Other orders subject to modification.*—Except for a declaration of paternity, the court may modify or set aside any order or part of an order under this subtitle as the court considers just and proper in light of the circumstances and in the best interests of the child.

The intermediate appellate court apparently read the clause, "a declaration of paternity in an order is final" to mean that the order is appealable immediately upon entry, without regard to the rules, reviewed above, concerning the finality of an order of default or finality in multiple claims cases.

---

**9.** We note that the issues reserved for later action in this case were separate issues in the same action, as opposed to separate actions tried together or matters that are collateral to the principal action. This distinction is important in determining the applicability of Md.Rule 2–602. *See Maryland-National Capital Park & Planning Comm'n v. Crawford,* 307 Md. 1, 38–39, 511 A.2d 1079, 1098–99 (1986); *Unnamed Attorney v. Attorney Grievance Comm'n,* 303 Md. 473, 483–84, 494 A.2d 940, 945–46 (1985); *County Executive of Prince George's County v. Doe,* 300 Md. 445, 451 n. 4, 479 A.2d 352, 355 n. 4 (1984).

Section 5–1038's use of the term "final" is concerned with the time during which the order of paternity is modifiable by the trial court. Subsection (a) of section 5–1038 states that the declaration of paternity is subject to revisory power only in the manner and to the extent that any order or decree of an equity court is subject to revision under any law, rule, or established principle of practice and procedure in equity. This is in contrast to subsection (b), which expressly provides that orders under subtitle 10, other than a declaration of paternity, may be modified under the standard set forth in section 5–1038(b). Among the subjects that a subtitle 10 order might address are the following: support of the child (§ 5–1032(a)(2)), a lien on the earnings of the father (§ 5–1032(d)), the mother's medical and hospital expenses for pregnancy, confinement, and recovery (§ 5–1033(a)(2)), the medical support of the child, including neonatal expenses (§ 5–1033(b)(1)), attorney fees to counsel representing the complainant (§ 5–1033(b)(2)), custody of the child (§ 5–1035(a)(1)), visitation privileges with the child (§ 5–1035(a)(2)), and "any other matter that is related to the general welfare and best interests of the child." (§ 5–1035(a)(4)). The purpose of § 5–1038 is to make plain that principles of continuing jurisdiction apply to orders in paternity cases, other than to the determination of paternity itself which remains subject to the ordinary rules governing revision.

Thus, section 5–1038 does not make an interlocutory determination of default or the final determination of one of a number of claims for relief an appealable judgment. Because appellant's order for appeal was filed within thirty days from the order which determined the last open claim, this appeal was timely noted. Accordingly, appellee's motion to dismiss the present appeal is denied.

## III

The General Assembly has established a straightforward scheme for resolving the difficult issues involved in paterni-

ty determinations.[10] The statute provides that a paternity complaint, which "need not be in any particular form," shall be written in simple, nontechnical language. Md.Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1010(a) and (b).[11] The complaint must be accompanied by notice to the alleged father (or defendant) that he has the right to a jury trial on the issue of paternity. *Id.* at § 5–1010(d)(1). A failure to give the notice will not invalidate the paternity proceedings if the alleged father appears for trial and the court otherwise safeguards his right to a jury trial. *Id.* at § 5–1010(e).

Many of the statute's provisions are designed to ensure that the alleged father is not compelled to present evidence. Significantly, the defendant is under no obligation to file a written answer to the complaint. *Id.* at § 5–1012(a) and (c).[12] If he does not respond in writing or does not admit any of the material allegations of the complaint in open court, the court is required to enter a general denial of the complaint on his behalf. *Id.* at § 5–1012(c). It follows from this requirement of section 5–1012(c) that the court may not enter a default order or a default judgment if the alleged father does not answer the complaint. *Cf.* Md.Rules 2–302; 2–321; 2–323; –2–613.

The same concept is recognized in the statute's special discovery apparatus—the State's Attorney's pretrial in-

---

**10.** One of the purposes of the paternity statute is "to simplify the procedures for determining paternity, custody, guardianship, and responsibility for the support of children born out of wedlock." Md. Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1002(b)(3).

**11.** The complaint shall state the facts on which the complaint is based. Md.Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1010(c). With certain exceptions, the complaint must also be supported by the oath of the mother or pregnant woman. *Id.* at § 5–1010(f).

**12.** If the defendant appears for trial without filing a written answer (or files a written answer admitting the complaint and is not represented by counsel), the court must read or explain the complaint to the defendant to ensure he understands the nature and substance of the allegations. Md.Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1012(d).

quiry. *Id.* at § 5–1019. Under this provision, the State's Attorney may, before or after a complaint is filed, "issue a summons that requires a person, *other than the alleged father*, to appear, to testify, and to produce documents connected with the examination." *Id.* at § 5–1019(b)(1) (emphasis added).[13] Before such a pretrial inquiry is conducted, the State's Attorney must notify the alleged father in writing of the time and place of the inquiry and his right to appear and to produce evidence that relates to the inquiry. *Id.* at § 5–1020(1) and (2).[14]

At the trial itself, the "alleged father may not be compelled to give evidence." *Id.* at § 5–1028(d).[15] No comment on or reference to his failure to testify is permitted. *Id.* at § 5–1027(c).[16] The burden is on the complainant to establish by a preponderance of the evidence that the alleged father is the father of the child. *Id.* at § 5–1028(a).[17]

---

**13.** The State's Attorney also has the power to administer oaths, examine witnesses, and receive evidence. Md.Code (1984, 1986 Cum. Supp.), Family Law Art., § 5–1019(b)(2)–(4). If a person fails to obey a summons, or fails to testify or comply with a request of the State's Attorney, the State's Attorney may request the circuit court to order the person to comply with the request. *Id.* at § 5–1019(c).

**14.** At the pretrial hearing, the alleged father also has a right to testify in his own behalf, subject to his signing a waiver that permits his testimony to be used against him in the paternity proceeding. Md. Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1020(3).

**15.** Section 5–1028(d) states:
*Compelling alleged father to give evidence.*—The alleged father may not be compelled to give evidence at the trial.

**16.** Section 5–1027(c) states:
*Comment on failure to testify prohibited.*—In a trial under this subtitle, no comment on or reference to an alleged father's failure to testify may be made or permitted.

**17.** Notwithstanding the alleged father's statutory privilege, he may be required to submit to blood tests. Md.Code (1984, 1986 Cum.Supp.), Family Law Art., § 5–1029(a). This is consistent with the general rule that the fifth amendment privilege against self-incrimination only protects evidence of a testimonial or communicative nature. *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (extracting blood from a non-consenting suspect was not covered under fifth amendment privilege against self-incrimination).

The paternity statute embodies the principle that an alleged father may not be officially coerced to give evidence. This statutory privilege serves the function of protecting those who are under the strain of accusation.

"One who is under the strain of actual or potential accusation, although innocent, may be unduly prejudiced by his own testimony for reasons unrelated to its accuracy. For example, he may have physical traits or mannerisms that would cause an adverse reaction from the trier of fact. Or, he might, under the strain of interrogation, become confused and thereby give an erroneous impression of guilt."

E. Cleary, *McCormick on Evidence* § 118 at 287 (3d ed. 1984). The privilege also tends to equalize the position of the alleged father who is confronted with the State's Attorney's pretrial inquiry apparatus.

## IV

In order to obtain a trial on the issue of paternity, appellant argues that subtitle 10, and particularly the provisions reviewed in Part III above, by implication prohibit propounding interrogatories to the alleged father. The argument would carry us farther than we need go to decide this case. Appellee argues that paternity proceedings are civil in nature, *see Commonwealth of Virginia ex rel. Halsey v. Autry,* 293 Md. 53, 60–61, 441 A.2d 1056, 1060 (1982), and that under Md.Rule 2–421 interrogatories are available in civil cases in circuit courts. Further, while the policy determinations made by the General Assembly which underlie the provisions particularly relied on by appellant seem to be concerned only with the paternity determination, an across-the-board prohibition against interrogatories would embrace questions directed to issues of financial ability and fitness for custody. We express no views on these matters. Here we shall assume that interrogatories, including interrogatories directed to the paternity issue, are permitted. We shall further assume that the privilege of the alleged father against compulsory testimony, *see, e.g.,*

§ 5–1028(d), does not excuse the failure to answer interrogatories, unless the privilege is the basis for a protective order actually obtained. *See* Md.Rule 2–432(a). Nevertheless, a circuit court may not enter a default judgment on the issue of paternity as a sanction for a discovery violation in a subtitle 10 paternity proceeding.

Section 5–1007 provides:

"Any rule of court or statute that relates to procedure applies to a proceeding under [the paternity statute] only to the extent that the rule is: (1) practical under the circumstances; and (2) not inconsistent with this subtitle."

Although a default judgment is one of the sanctions available in a court's discretion under Rule 2–433, use of that sanction on the issue of paternity is not consistent with subtitle 10. We have seen how the legislative policy creating a statutory privilege against "self-incrimination," as reflected in § 5–1012(c), requires the court to enter a general denial to the complaint on behalf of a defendant who has not answered, but who contests the material allegations. Because there cannot be a default judgment on the paternity issue for failure to respond to the complaint, it is inconsistent to enter a default judgment on the issue of paternity for failure to answer interrogatories against a defendant who does not "admit the material allegations of the complaint in open court." § 5–1012(c)(2).

For the foregoing reasons, the appellant is entitled to a trial on the issue of paternity. Appellant does not, however, challenge the award of custody, which was also determined at the *ex parte* hearing of May 29, 1985. Nor does appellant challenge the determinations made on August 14, 1985, other than to the extent that they are predicated on the default judgment as to paternity. Consequently, under Rule 871 we shall direct a remand. If on remand appellant is found to be the father of the child, the court shall enter judgment accordingly. If on remand appellee fails to prove that appellant is the father, then the circuit court shall

strike all other orders heretofore entered against appellant which were dependent on a declaration of paternity.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT TO ENTER A JUDGMENT REMANDING THIS CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.