Green, J.
The parties in this action seek a determination of their respective obligations to repair a certain storm sewer (culvert) running under defendant’s property on Market Street in Everett and Chelsea (locus). In addition, both parties seek money damages for alleged breaches by the other of contractual, common law or statutory duties relating to the culvert.
The action commenced with plaintiffs’ complaint, filed in this court on April 9, 1996. The complaint asserted six counts: (i) declaratory relief, declaring defendant’s obligation to repair and maintain the culvert; (ii) quantum meruit, for recovery of amounts expended for previous repairs of the culvert; (iii) injunctive relief, enforcing a deed restriction against trucks weighing more than twenty tons driving over the culvert; (iv) damages for alleged breaches of such deed restriction; (v) damages for negligence, arising from damage to the culvert; and (vi) damages for unfair and deceptive practices under G.L.c. 93A. Defendants answered the complaint on May 31, 1996, and asserted counterclaims in three counts: (i) damages for negligence, arising from plaintiffs’ failure properly to maintain the culvert; (ii) damages for breach of contract, arising from plaintiffs’ failure to perform contractual obligations to maintain the culvert; and (iii) damages for unfair and deceptive practices under G.L.c. 93A.
The matter entered in the land court as miscellaneous case number 227414. However, a number of the counts in the complaint and counterclaim are outside the land court’s jurisdiction. Pursuant to the joint request of the parties, I submitted a request to the Chief Justice for Administration and Management of the Trial Court for transfer of the matter to the Superior Court for Suffolk County, and an interdepartmental assignment allowing me to hear the matter as a justice of that court. By order entered on December 27, 1999, the CJAM transferred the matter to the Suffolk Superior Court, and assigned me to that department for the purpose of hearing it. The case was assigned civil action number 01-1336H.[3]
Plaintiffs moved for partial summary judgment on counts (i), (ii) and (vi) of the complaint. In opposition, defendant moved for summary judgment in its favor on all counts of the complaint, and on counts (ii) and (iii) of the counterclaim.
The summary judgment record consists of the following:[4]
(a) photocopy of plan entitled “Subdivision Plan of ■ Land in Everett-Chelsea-Mass.,” dated May 19, 1966, and drawn by William S. Crocker, Inc. (1966 plan);
(b) photocopy of license no. 4962 (license 4962) issued to Eastern Gas and Fuel Associates, filed with the Middlesex south district of the land court (Middlesex land court) as document no. 426688, recorded with the Middlesex County south district registry of deeds (Middlesex registry) inbook 10993, page 218, and recorded with the Suffolk County registry of deeds (Suffolk registry) in book 7997, page 668;
(c) affidavit of Michael J. Cawley, a vice president of Eastern Enterprises (Eastern);
(d) photocopy of deed of locus from Eastern to defendant Boston Market Terminal (Market) dated June 30, 1966, recorded with the Middlesex registry in book 11182, page 106, and filed with the Suffolk registry district of the land court (Suffolk land court) as document no. 279562, and with the Middlesex land court as document no. 435458;
(e) photocopy of transfer certificate of title nos. 121694 and 75683, evidencing Market’s ownership of the registered portions of locus;
(f) redacted photocopy of a report of GEI Consultants, Inc. regarding the location of pipes discharging into the culvert;
*662 (g) photocopy of a plan of land entitled “Utility Location Plan Subdivision of Land Being a Portion of Land Court Certificate #121694 as Shown on L.C.C. 50IE in Everett, Mass, owned by Boston Market Terminal Co." dated January 30, 1984;
(h) photocopy of letter dated October 28, 1966;
(i) photocopy of deed from Eastern to Ray C. Johnson, conveying all of Eastern’s rights in the culvert, recorded with the Middlesex registry in book 11693, page 490, and with the Suffolk registry in book 8286, page 424;
(j) photocopy of deed of Frederic B. Dailey and Mark D. Titlebaum, trustees, to Ray C. Johnson, dated May 20, 1969;
(k) photocopy of portions of the transcript of a deposition of James T. Hayes;
(l) photocopy of letter from Michael J. Eschelbacher to John Glessner, dated March 21, 1984;
(m) photocopy of letter from Michael J. Esehelbacher to John P. Dennis, dated April 11, 1984;
(n) photocopy of letter from John P. Dennis to Michael J. Eschelbacher, dated April 4, 1984;
(o) photocopy of letter from Samuel A. Frederick to Michael J. Eschelbacher, dated July 2, 1984;
(p) photocopy of letter from Paul B. Galvani to Michael J. Eschelbacher, dated December 7, 1987;
(q) photocopy of letter from Michael J Cawley to James Hayes, dated July 21, 1994;
(r) photocopy of letter from Paul B. Galvani to Michael J. Eschelbacher, dated December 5, 1995;
(s) photocopy of letter from Paul B. Galvani to Michael J. Eschelbacher, dated January 11, 1996;
(t) photocopy of letter from Frederic B. Dailey to Ray C. Johnson, dated May 21, 1969;
(u) photocopy of letter from Frederic B. Dailey to Ray C. Johnson, dated May 23, 1969;
(v) photocopy of deed from Eastern to Ray C. Johnson, dated December 26, 1967, and recorded with the Middlesex registry in book 11449, page 348;
(w) photocopy of deed from Ray C. Johnson to Eastern, dated December 29, 1967;
(x) affidavit of James E. Tamagini, Esq.;[5]
(y) affidavit of Norman T. Byrnes, Esq.;
(z) photocopy of memorandum from Denis L. Rossi to H. Brown Baldwin, dated April 19, 1985;
(aa) photocopy of portions of the transcript of a 30(b)(6) deposition of Eastern by Lawrence Piazza;
(bb) photocopy of letter from Michael Esehelbacher to H. Brown Baldwin, dated May 30, 1984;
(cc) photocopy of letter from Samuel A. Frederick to Michael J. Eschelbacher, dated July 27, 1984;
(dd) photocopy of “engineering study of collapsed section corrugated metal storm drain Boston Market Terminal area prepared for Eastern Gas & Fuel Associates;” and
(ee) photocopy of certificate of death of Raymond Johnson.
The following facts are not in dispute.
1. Eastern is the successor-in-interest to Eastern Gas and Fuel Associates, a duly organized Massachusetts business trust, under the terms of a declaration of trust dated July 18, 1929, as amended.[6] Plaintiffs are the Eastern’s current trustees.
2. Market is a duly organized Massachusetts corporation with a business address of 34 Market Street in Everett, and the current owner of locus. Locus is an assemblage of contiguous parcels of land in Everett and Chelsea, shown on the reduced plan attached as appendix A.* Portions of locus are registered land, and portions are unregistered; Market’s title to the registered portions is evidenced by transfer certificates of title nos. 121694 and 75683.
3. On August 11, 1965, pursuant to G.L.c. 91, §14, the department of public works[7] issued license 4962 to Eastern “to fill solid an existing drainage ditch and to place and maintain pipe drains and appurtenant structures in Island End River, in the cities of Chelsea and Everett, in conformity with the accompanying plan No. 4962 (three sheets)." License 4962 also stated:
This license is granted upon the express condition that the licensee, its successors or assigns, shall maintain the installations authorized hereby in good condition at all times, and upon failure to so maintain said installations, the Department of Public Works, or its successors, may require removal thereof and restoration of the drainage ditch required under said previous licenses.
4. License 4962 authorized filling of land, and the installation of a underground corrugated steel culvert 15 feet 6 inches wide by 9 feet 6 inches tall in place of a then-existing open drainage ditch, across land which includes locus. Between November 1965 and October 1966, pursuant to license 4962, Eastern filled land and installed the culvert. As installed, the culvert provides drainage from the southerly end of an open drainage ditch to its outlet into the Island End River. The culvert extends diagonally across the southeastern end of locus, and continues under Market Street to its outlet into the river.
5. By deed dated June 30, 1966, recorded with the Middlesex registry in book 11182, page 106, filed with the Middlesex land court as document no. 435458, and filed with the Suffolk land court as document no. 279562, Eastern conveyed locus to Market (1966 locus deed).
6. At the time of the 1966 locus deed, Eastern had not completed installation of the culvert. The 1966 locus deed included a conveyance of the rights to use certain ways shown on the 1966 plan. It also contained the following reservations by Eastern: *663 Eastern reserves the right to do all work called for by existing licenses to fill, to use the existing drainage ditch until July 15, 1966, and to construct and use until July 15, 1966, such temporary diversion trenches as may be convenient in the construction of drainage facilities and in the filling of open ditches to be done by Eastern as provided in such licenses in the granted premises to Elevation 14, Eastern Gas and Fuel datum, without unreasonable delay. However, filling of any ditch which Eastern has a right to use temporarily hereunder may be postponed until that right expires. Eastern shall construct near the first and second parcels herein described a riprap outfall, a drainage ditch 65 feet wide with masonry rubble slopes and a riprap inlet and within the second parcel herein described a 15’ 6" storm sewer.[8]
Eastern reserves the right to construct, use, maintain and repair a storm sewer underground in a strip of land 30 feet wide having as its center line the line shown and marked “15’-6" x 9’ 5" Storm Sewer” on the 1966 plan and to use said strip of land of its full width and extent for passage on foot and with vehicles for access to the remaining land of Eastern. Market shall have the right to use said strip of land for all purposes consistent with the rights reserved and, without implied limitation, for purposes of passage and temporary parking of motor vehicles of gross weight of not more than 20 tons in such manner as not to interfere substantially with the right of passage. Eastern shall restore the surface of said strip to its former condition on each occasion after opening it.
7. The 1966 locus deed also stated:
This conveyance is made subject to public rights below natural mean high water mark as affected by license to fill issued by the Commonwealth of Massachusetts on August 11, 1965, recorded with Middlesex South District Deeds in Book 10993, page 216, filed in the Middlesex South Registry District of the Land Court as Document 426688, recorded with Suffolk Deeds in Book 7997, page 668, and filed in the Suffolk Registry District of the Land Court as Document 275412, and by licenses specified in and made irrevocable by Chapter 785 of the Acts of 1963 and Chapter 427 of the Acts of 1964 upon compliance with certain conditions. Eastern covenants that it has complied with conditions #1 thorough #8 of said chapters and agrees that it will comply with condition #9 of said Chapter 785 and assume any cost in connection therewith.[9]
8. By deed dated May 15, 1969, recorded with the Middlesex registry in book 11693, page 490, and with the Suffolk registry in book 8286, page 424, Eastern conveyed to Ray C. Johnson “all [of Eastern’s] rights in land in Everett, Middlesex County, Massachusetts and Chelsea, Suffolk County, Massachusetts, whether by reservation in its deeds or otherwise, in respect to the 15’ 6" x 9’ 6" Storm Sewer . . .” The deed was delivered to Mr. Johnson under cover of a letter dated May 21, 1969, from Frederick B. Dailey, on behalf of Eastern, confirming Eastern’s intention to divest itself of all rights in respect of the culvert (as well as certain other property in the vicinity).[10]
9. On or about March 19, 1984, a section of the culvert within locus collapsed. Market and Eastern exchanged correspondence, in which each argued that the other held responsibility to repair the culvert. Eventually (in 1988), Eastern repaired the culvert, though it advised Market that it did not acknowledge legal responsibility for the repairs, and that it reserved its rights to seek recovery of its costs. Eastern also engaged a consulting engineer, who conducted periodic inspections of the culvert over the next several years.
10. In 1994, Eastern determined that a second section of the culvert had collapsed or was about to collapse and needed repair. Market again refused to perform the repairs, and Eastern again performed the repairs “under protest.” Shortly thereafter, in 1996, Eastern commenced this action seeking a declaration of its obligations.
Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c).
Market contends that Eastern undertook in the 1966 locus deed the obligation to repair and maintain the culvert in perpetuity. Specifically, Market cites the language by which Eastern reserved “the right to construct, use, maintain and repair” the culvert. Eastern contends that it reserved merely the right, and not the obligation, to perform such repairs. Eastern further argues that the primary obligation to maintain and repair the culvert rests with Market, since maintenance of the culvert is an express condition of license 4962 (to which the 1966 locus deed was expressly made subject).
“The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances.” Sheftel v. Lebel, 44 Mass.App.Ct. 175, 179 (1998) (citations omitted). See also Commercial Wharf East Condominium Ass’n v. Waterfront Parking Corp., 407 Mass. 123, 131 (1990).
Market appears, correctly, to concede that its title to locus is subject to license 4962, which runs with the land. See 1 Opinions of the Attorney General 412, 418 (1897) Cf. Saxe v. Street Comm’rs of Boston, 307 Mass. 495, 498 (1940). Consequently, Market acknowledges that the Commonwealth (through the department of environmental protection) may take action against Market to enforce the condition in license 4962 requiring maintenance of the culvert.[11] However, Market contends that it holds a separate contractual right to require Eastern to perform all *664 necessary repairs, by virtue of Eastern’s reservation in the 1966 locus deed of the right to repair the culvert.
Market’s contention ignores the distinction between a right reserved by a grantor under a deed, and a covenant to perform an obligation. Ordinarily, an easement (whether created by grant or reservation) includes the right to make such improvements or repairs as necessary to the use of the easement. See e.g., Hodgkins v. Bianchini, 323 Mass. 169, 173 (1948). However, absent a separate affirmative covenant, such an easement does not impose upon the easement holder the obligation to perform such repairs for the benefit of the owner of the servient estate. See L. Jones, Easements, §821 (1898), citing Roberts v. Roberts, 55 N. Y. 275.[12]
At the time of the 1966 locus deed, Eastern had a continuing interest in the culvert, by reason of its continued ownership of other land served by drainage' through the culvert. That other land included the drainage ditch, situated immediately to the north of the culvert, and draining through it into the Island End River. Eastern accordingly had an understandable interest in ensuring that it could control the continued sufficiency of the culvert to conduct storm drainage to the Island End River, and reserved the right to do so in its deed of locus to Market. However, nowhere in the language of the deed, or in any other agreement or undertaking submitted in the record, did Eastern undertake an affirmative obligation, or otherwise covenant with Market, to perform such repairs. By contrast, Eastern affirmatively agreed, in the last sentence of the paragraph in the 1966 locus deed immediately preceding its reservation of rights in the culvert, to construct the culvert (which was not completed at the time of the 1966 locus deed).[13] Moreover, the conveyance to Market was made expressly subject to license 4962, which was conditioned on the licensee maintaining the culvert.[14]1 conclude that, as between Eastern and Market, Eastern has no obligation to perform repairs of the culvert.
Under count (ii) of the complaint, Eastern seeks damages in quantum meruit for costs it incurred to repair the culvert. However, Eastern acknowledges that such a claim is subject to a six-year statute of limitations, so that any such claim is time-barred as to costs incurred prior to April 9, 1990. In any event, Eastern performed repairs in both 1988 and 1994 in part out of concern for the legal uncertainty over its obligation to do so, and I conclude that factual questions regarding the circumstances of such work preclude entry of summary judgment in Eastern’s favor on its claim in quantum meruit for costs incurred after April 9, 1990.[15]
Both parties have moved for summary judgment on their competing claims under G.L.c. 93A, but the parties have not addressed their c. 93A claims in their otherwise lengthy memoranda. Absent presentation by the parties, I decline to address the claims here.
Eastern’s motion for summary judgment is ALLOWED IN PART (as to its request for declaratory relief), and DENIED IN PART (as to its claims in quantum meruit and under G.L.c. 93A). Market’s cross motion for summary judgment is DENIED. I find the remaining claims are independent of the claim for declaratory relief, and there is no just reason for delay in the entry of judgment on count (i) of the complaint. Mass.R.Civ.P. 54(b).[16] Judgment on count (i) accordingly.[17]

 I initially assigned the transferred action an interim docket number 99-LC1, by order entered on December 30, 1999, pending assignment of a permanent number by the Clerk of the Suffolk County Superior Court.

 Many of the materials in the record are unauthenticated photocopies of documents, including recorded deeds, correspondence and engineering reports. As neither party has objected to the admissibility of such materials (except as noted below), and as both have referred extensively to such materials in their respective memoranda, I consider them included in the record for purposes of summary judgment.
Prior to the hearing on the cross motions, I heard and allowed Eastern’s motion to strike, as irrelevant, a photocopy of a deed from Eastern to the City of Everett, dated September 22, 1964.

 Prior to the hearing on the cross motions, I heard and denied Eastern's motion to strike Mr. Tamagini’s affidavit. The motion argued that the affidavit expressed matters of legal opinion rather than of fact, and was inadmissible on that basis. I denied the motion, based on my determination to consider the legal opinions expressed in the affidavit as argument (as though advanced in a brief or memorandum on the summary judgment motion), and reserving to myself determination of the legal questions presented by the case.

 The trust declaration is not in evidence, but the parties do not appear to contest the status of Eastern as a Massachusetts business trust. As used in this decision, the designation “Eastern” refers interchangeably to both Eastern Enterprises and to Eastern Gas and Fuel Associates.

 Such licenses are currently administered by the Department of Environmental Protection, as the result of a transfer of authority effected under chapter 706 of the Acts of 1975.

 The “second parcel” referred to is “lot 9" on the 1966 plan, across which the culvert extends.

 Conditions 1 through 8 of chapter 785 of the Acts of 1963 established certain requirements pertaining to the performance of the filling work. Condition 9 obligated Eastern to make “payment to the commonwealth of such compensation as may be determined by the governor and council for making irrevocable the rights granted in any land the title to which is in the commonwealth.” None of such conditions imposed any obligations for continuing maintenance of any of the filled lands or the culvert.

 Mr. Johnson was a professional “straw" in real estate transactions. Eastern previously (in 1967) had conveyed to Mr. Johnson of record its interest in the drainage ditch located to the north of the culvert, along with its interest in certain streets and ways in the area. However, Eastern had retained control of such land; Mr. Johnson contemporaneously delivered to Messrs. Dailey and Titlebaum (trustees under a nominee trust acting as agents for Eastern) an unrecorded deed of the same land. Mr. Dailey’s letter of May 21, 1969, disclaimed any continuing interest of Eastern in such land, *665 and included a second deed (dated May 20, 1969) reconveying the land to Mr. Johnson. Mr. Johnson died in 1974, but the record does not elucidate the disposition of any property he may have held at the time of his death.

 At oral argument, counsel for Market suggested that it should not be considered Eastern’s “successor.” As grantee under the 1966 locus deed, however, Market is at least Eastern’s “assign” in respect of license 4962.

 As between the owners of the dominant and servient estates benefltted and burdened by an easement, the owner of the servient estate may not interfere with exercise of the easement, but generally is not obliged at common law to repair the easement for the benefit of the owner of the dominant estate. See Doane v. Badger, 12 Mass. 65, 69 (1807). In the instant case, Market’s property drains into the culvert, so Market likely holds shared responsibility to maintain the culvert (separate and apart from its obligations under license 4962).
In some circumstances the owner of the dominant estate may hold an obligation to maintain the easement in a safe condition, to prevent injuiy to third persons. Cf Flanagan v. Welch, 220 Mass. 186, 191 (1915); Prescott v. White, 12 Pick. 341, 342-43 (1838). However, any such obligation arises incident to the dominant tenant’s rights in the easement under privity of estate, and (absent an affirmative covenant) is not personal to a grantor reserving an easement. Accordingly, whatever responsibility Eastern might ever have held to maintain the culvert incident to its enjoyment of the right to use it passed when Eastern divested its interest in any land served by the culvert. Compare Shoolman v. Wales Mfg. Co., 331 Mass. 211, 211-13 (1954) (tenant’s assignment of lease to straw relieved it of obligation to pay rent, where assignor was not party to the original lease contract) with Mason v. Smith, 131 Mass. 510, 511 (1881) (original lessee retains liability under lease notwithstanding assignment, by reason of privity of contract).

 I decline to adopt Eastern’s attempt to characterize its reservation of rights in the culvert as only temporary, though it is irrelevant whether the reservation was temporary or permanent since it was only a reservation of the right, and not a covenant or other assumption of the obligation, to perform repairs on the culvert.

 I do not resolve whether license 4962 imposes an affirmative obligation on Market to maintain and repair the culvert. Strictly speaking, the license may be read not to impose an affirmative repair obligation, as the requirement for repairs is merely a condition to the license (failure of which, according to the terms of the license, could result in an order requiring removal of the culvert and restoration of the open drainage ditch previously in that location).

 Other than to state that it performed repair work. Eastern has not articulated the basis on which such work satisfies the requirements for a claim in quantum meruit.

 In particular, conclusion of the question of Eastern’s responsibility for repairs to the culvert removes some uncertainty that appears to have hampered prompt response to previous cave-ins, in a setting where the need for repairs, left unaddressed, poses some risk to safety.

 With the entiy of judgment on the count for declarator relief, it may be that there is no continuing reason for interdepartmental assignment of a land court judge to hear the remaining counts.

 Editor’s Note: Appendix A is not included here.